## MARY A. WRIGHT *v.* B. DUFIELD *et al.*

1. FEME COVERT. *Privy acknowledgment. Defective. When.* Where the Clerk's certificate fails to recite that the deed was signed by the married woman, "voluntarily and understandingly," it is defective for such failure; her title is unaffected thereby, such deed carrying with it no legal significance, and the same may be declared void at her instance.

   Cases cited: W. J. Anderson *v.* J. W. Beverly, MSS. at Knox.; Henderson *v.* Rice, 1 Cold., 223.

2. TITLE BOND. *Insufficient to pass the title of a married woman. When.* A title bond, though duly executed and certified in every respect, is insufficient to pass the title of a married woman in land. Her title can be divested only by the joint deed of herself and husband, executed in compliance with the forms prescribed by law. Nor can she be forced specifically to execute such agreement.

   Case cited: Robert Mosely *v.* B. L. Porter, MSS.

3. SAME. *Rescision of sale. Purchase money restored. Lien on land. Persons under disability.* Where a sale is rescinded the vendor will be compelled to restore the purchase money, and the amount paid will be held a lien upon the land, even against a lunatic or married woman; but these conditions will not be imposed if the purchaser was guilty of fraud or imposition in procuring the deed.

   Cases cited: Heis. Dig., 466; Pilcher *v.* Smith, 2 Head, 212; Hilton *v.* Duncan, 1 Cold., 313.

4. SAME. *Same. Attorney's lien.* Though the lien for the purchase money on the corpus of the property is prior to the solicitor's lien for fees, still the same does not extend to rents and profits accrued, and out of such the counsel's fee will be allowed.

---

FROM FRANKLIN.

---

Appeal from the Chancery Court. WILLIAM P. HICKERSON, Presiding.

JESSE ARLEGE and P. TURNEY for Mary A. Wright.

COLYAR, MARKS & FITZPATRICK for B. Dufield and Wife.

BURTON, Special J., delivered the opinion of the Court.

In the latter part of the year 1867, the complainant, then the widow of ———— Buchanan, went to reside in the town of Winchester, County of Franklin. In November, 1867, she bought of Mrs. Agnes E. Colyar, wife of A. S. Colyar, the house and lot in Winchester, the property in this litigation. Soon after her removal to Winchester, and in February, 1868, she intermarried with the defendant, R. S. Wright. On the ———— day of July, 1868, complainant and her said husband sold and conveyed by title bond the lot in suit to the defendant, Whitfield Ransom, for the sum of $3,000. The title bond was in the usual form, except that the obligors bound themselves to convey to Ransom, "or whomsoever she should designate." In point of fact, Ransom made the purchase for the defendant, Mrs. Dufield, at the request of her husband.

It also appears that the understanding and agreement of the parties was, that the deed was to be made as soon as the money could be had from New York, where it seems Dufield had it on deposit. The money was received in a few days, and on the 10th of August, 1868, the $3,000 was paid to the complainant; and on the same day she joined with her husband in a conveyance in fee of the lot to

the defendant, Mary E. Dufield.    On the 3d of September, 1868, the complainant filed her bill, in which she alleges that the deed was obtained from her by the mingled falsehood, cajolery and brow-beating of the defendant, her husband, R. S. Wright.    She further insists that the deed is void and inoperative, because D. R. Slatter, who took, or pretended to take, her privy examination, was neither a clerk or deputy clerk, or otherwise empowered to take the same.

The prayer of the bill is, that the deed be declared void, and that the title to the property be revested in her.    The facts on which the deed is impugned for fraud will be more fully adverted to hereafter.

We deem it unnecessary to discuss the power of Slatter to take the acknowledgement and privy examination of the complainant, because the same is fatally defective on its face, as certified by Slatter.    It recites that she acknowledged the signing of the deed of her own free will, without any constraint or compulsion on the part of said husband.    It is seen here that the words , "voluntarily and understandingly," prescribed by the Code, are wholly omitted in this certificate.    In the case of *W. J. Anderson* v. *J. W. Beverley,* MSS., lately decided at Knoxville, it is held that the omission of the word "understandingly" in the certificate of the privy examination of a *feme covert* is defective, and the acknowledgement of the deed was held a nullity.

Mary A. Wright *v.* B. Dufield *et al.*

It is true, that in the case referred to, it was held that the defective probate in that case was correct, because the deed had been registered for more than twenty years. But we are content with the reasoning of that case, and on the authority of it we hold this probate defective. The certificate being fatally defective, the deed can have no legal effect whatever, and complainant's title to the lot is not affected by it. *Henderson* v. *Rice,* 1 Cold., 223.

But it is insisted by the defendant that, inasmuch as the title bond in this case was duly executed and acknowledged, and complainant has received the purchase money, she holds the naked legal title as trustee for the bargainors, and the Court should divest it out of the complainant and vest it in the defendant, Mary E. Dufield. It is a sufficient reply to this argument that when the title bond was surrendered on the execution of the deed, it was no longer available for any purpose.

In the case of *Robert Mosely* v. *B. L. Porter,* MSS., it is held by this Court that a title bond, though duly executed and certified in every respect, is ineffectual to pass the title of a married woman in land, and that her title can be divested only by the "joint deed" of husband and wife executed in compliance with the forms prescribed by law. And it is further held that she can not be forced specifically to execute such agreement.

It follows from these authorities that the complainant is entitled to have the deed in this case

declared void by the decree of the Court. But the defendants, in their answer, which is filed as a cross-bill, also insist that if this be so, they having paid the purchase money, have the right to have the same repaid, and also to have it declared a lien on the property. The bill in this case is, in substance, a bill to rescind the contract about the land in suit.

On the rescision of a sale it is the settled practice in this State to require of the vendor, as incident to the relief granted him, to restore the purchase money he has received; and the amount paid upon the purchase will be held a lien upon the land, even against a lunatic or a married woman. Heis. Dig., 466, and authorities there cited.

The vendor is bound, upon an immutable principle of natural justice, to refund the purchase money before being entitled to demand back the property sold. 2 Head, 212. In the case first cited the decision was rested on the ground that there was positive fraud and imposition on the part of the married woman, and on principle this we think is right. But in subsequent cases it is held that the same mere effort to avoid the contract without restoring the purchase money is itself a fraud, which will not be permitted. 1 Cold., 313.

In *Smith* v. *Evans* this doctrine applied to a minor seeking a rescision, with the limitation, however, that the contract on the part of the purchaser must be free from the imputation of fraud or imposition, and we perceive no good reason why the same

limitation should not exist in case of the other disability of coverture.

We proceed then to inquire whether, in the case in hand, the purchaser is repelled by fraud. The complainant alleges in her bill that she never did consent to the sale of her lot. She says that the defendant, her husband, procured her to sign the bond and deed by falsely pretending to her that he would purchase the boarding-house connected with Mary Sharp College; that he would refit it and make a deed of gift of it to complainant. This he did not do, but, as she says, he possessed himself of the money paid for her house, left her and has absconded. So far as the defendant, Wright, is concerned, there is no doubt that he practiced a cruel fraud upon complainant, and every principle of justice would prompt us to give her any measure of relief consistent with the just rights of other innocent persons.

We do not understand that the other defendants, or either of them, are distinctly charged with complicity in these fraudulent designs of Wright. It is said, to be sure, that Ransom took an active part in having the title bond and deed prepared, while the purchase was, in fact, for Mrs. Dufield. And it is further alleged that Ransom had, or had had some interest in the contract, but what interest was unknown to complainant. It is further insisted in argument that the putting Ransom forward to make the foreclosure was a fraudulent contrivance to induce

the complainant to part with her property when it was known to defendants that she was averse to doing so, at least to the defendant Dufield. Ransom and Dufield both deny all these charges. They both say that Ransom had no interest in the trade. The explanation given of the fact that Ransom intervened in the transaction is, that Wright and complainant were both somewhat at outs with Dufield, because he had taken part against Wright in some negotiations about the boarding-house, and for the further reason that Ransom was known to be pecuniarily prompt and reliable. And Ransom positively swears that he never negotiated for the place until he had been told by the complainant, in the absence of her husband, that she desired to sell it. It should further be observed that, according to the complainant's own showing, the full amount of the purchase money was paid into her own hand. Indeed, as to $2,300, she says she loaned it to her husband and took his note for it, her brother being present, and writing the note. And although she says that her husband absconded with all the money, the proof convinces us that she retained and actually used a considerable portion of it.

The fact that the money was paid to complainant is not without weight. It need not be suggested that this is the same thing as paying to the husband. The ancient common law maxim that the wife's legal existence is merged by the marriage, and that she is in legal intendment, *sub potestate viri,*

Mary A. Wright *v.* B. Dufield *et al.*

must be accepted only with material modifications. She may, even by contract with the husband, acquire rights enforceable in the Courts, and that she has a legal independent existence is evidenced in the daily administration of justice, and is asserted with sufficient energy in every-day life.

Our conclusion is, that the unfortunate sale of this property resulted from the over-confidence of complainant in her husband, and not from the fraud of defendants. And while we declare the sale of the property void, we are not warranted by any thing disclosed in the record in denying to defendant, Dufield, the wanted relief of requiring the restoration of the purchase money, and declaring the full amount of it a lien on the property. It appears that the property has been placed in the hands of a receiver, and has by him been rented out. The complainant is entitled to the rents and profits to be deducted from the purchase money and interest.

The decree of the Chancellor is reversed, and a decree will be entered here in accordance with this opinion, and the cause is remanded to the Chancery Court to be proceeded in. The costs in this Court will be paid by the defendants; the costs of the Court below are not adjudged, but left to the future adjudication of the Chancellor.

―――

Since the foregoing opinion was prepared, application has been made on behalf of the solicitors of

15―vol. 2.

complainant in this cause to have a lien declared in their favor for their reasonable fees in and about prosecuting the cause; and the further application is made to have the rents accrued since the property was taken out of the hands of complainant devoted to the payment of the same. We are not satisfied that we can declare the lien of the solicitor prior and superior to the lien of defendant Dufield for the purchase money, on the corpus of the property in litigation. But we do not think that the lien for the purchase money does extend to the rents and profits of the house and lot, and see no reason why the application of the solicitors should not be allowed, so far as the rents are concerned. On the cause being remanded, therefore, the Chancellor will have a reference to ascertain what is a reasonable fee for the solicitor's services in this cause, and the rents accrued since the property was taken out of the hands of complainant will be applied in satisfaction of the same.

By THE COURT.—Let the defendants pay all the costs of this Court and Court below.