# HILL *v.* HARRIMAN.

## (*Knoxville.* September 24, 1895.)

1. RESCISSION. *Not allowed, when.*

    A vendor of real estate in exchange for 276 shares of corporate stock cannot maintain a bill for rescission upon a tender of 285 shares of a par value much less than those received, and 176 shares of which are different from those received. (*Post, pp. 301–305.*

    Cases cited and approved: Coffee *v.* Ruffin, 4 Cold., 516; 12 How., 51; 102 U. S., 79.

2. SAME. *Same. Insufficient allegation.*

    The general allegation in a bill for the rescission of a sale of stock that the buyer disposed of the " few shares " not tendered back before he became aware of the fraud complained of, is not sufficient to avoid the general rule requiring a return in specie, but all the material facts with respect to such disposition, such as the price received, the time and place of sale, name of the purchaser, and what particular shares they were, must be disclosed. (*Post, pp. 305–307.*)

    Cases cited: 13 Morrison's Mining Rep., 15; 29 Atl. Rep., 191.

3. SAME. *Same. Same.*

    The allegation in a bill for the rescission of a sale of stock, that the entire issue was fraudulent and of no value, will not justify a rescission without a return of the stock, where it appears from other portions of the bill that the stock must have had some value, and that complainant had received a stock dividend thereon, and had sold and not reclaimed part of it. (*Post, p. 307.*)

4. CHANCERY PLEADING. *Prayer for relief.*

    Under a bill for rescission, containing proper averments, it is allowable to unite with the primary prayer for rescission an alternative prayer for damages. (*Post, pp. 308, 309.*)

Hill *v.* Harriman.

5. Same. *Amendment.*

A party will not be allowed the benefit of an amendatory pleading in positive antagonism to the original pleading without specifically showing some inadvertence or mistake in the original pleading, and giving full and satisfactory reasons therefor. and for the change desired to be made. (*Post, pp. 307–310.*)

FROM ROANE.

Appeal from Chancery Court of Roane County. H. B. LINDSAY, Ch.

GEO. W. EASLEY for Hill.

WEBB & McCLUNG, TEMPLETON & CATES, and HARRIMAN & McKENZIE for Harriman.

CALDWELL, J. The original bill in this cause was filed for rescission, the amended bill was filed for rescission primarily and for damages in the alternative.

The Chancellor dismissed the original bill on demurrer, and, upon motion of defendant, struck the amended bill from the files. On appeal, the Court of Chancery Appeals modified and affirmed the decree of the Chancellor, so as to dismiss both bills without prejudice.

Without attempting to state the very elaborate pleadings at any great length, it is sufficient, for present purposes, to say, briefly, that complainant

alleged in his original bill (to which he made oath),
that on the sixth day of October, 1891, he sold
and conveyed to the defendant a certain dwelling
house and three lots of ground, in Harriman, Ten-
nessee, at the agreed price of $8,200, taking in ex-
change therefor 276 shares of stock in the East Ten-
nessee Land Company, represented by defendant to
be of like value; that, long thereafter, he learned
that defendant had perpetrated a fraud upon him by
representing said stock as full paid and good, when,
in truth, it had been fraudulently issued, and was
of no value; that, with due diligence, he approached
the defendant January 21, 1895, and asked a cancel-
lation of their trade, at the time tendering to
the defendant a certificate of stock in the East Ten-
nessee Land Company for 285 shares, of the par
value of $14,250, and demanding therefor the sur-
render and reconveyance of the aforesaid house and
lots; that the 285 shares so tendered were the same
in amount, "together with the stock of scrip div-
idend thereon," as the shares received by him from
the defendant, and were "the same stock" so re-
ceived, "excepting a few shares—not exceeding ten—
of the par value of $50 each, which the complain-
ant disposed of before becoming aware of the frauds
herein alleged;" that the defendant refused the pro-
posed cancellation, and persisted in holding posses-
sion of the house and lots, thereby forcing com-
plainant to resort to a Court of Equity for a rescis-
sion upon the ground of fraud, and, with the bill,

was tendered, in Court, the same shares of stock alleged to have been tendered to the defendant, previously, in private.

In detailing at great length the different transactions in which the defendant became possessed of the 276 shares of stock used by him in the exchange of property, complainant alleges, among other things, that the defendant acquired 250 shares, of the par value of $25,000, in a certain issue of $500,-000, and that he acquired 100 shares of the par value of $5,000 in a certain other issue of $100,000. An examination of these figures, taking them to be true as alleged, shows that the defendant acquired 350 shares, of which 250 were of the par value of $100 each, and 100 of the par value of $50 each, in all $30,000. Of these 350 shares, 276 are alleged to have been transferred to complainant, in exchange for his house and lots. Which of said shares, how many of the one class and how many of the other were so passed, is not stated in any part of the bill, yet, it is entirely manifest that at least 176 of them must have been of the par value of $100 each, representing in all $17,600. To this, add the 100 shares of the par value of $50 each, representing in all $5,000, and a total of $22,600 is produced as the least amount of stock that could have been represented by the whole 276 shares.

By his own showing, the complainant must have received at least that amount of stock from the de-. fendant, and yet, he does not pretend in his bill

to tender, or to be able to return so much, by
$6,350. He offers to return $14,250 of stock,
which he alleges is the same amount he received,
excepting a few shares—not exceeding ten—of the
par value of $50 each. Notwithstanding that alle-
gation, it is but an easy matter of calculation to
ascertain, from figures elsewhere set out in his bill,
that the amount tendered is certainly as much as
$6,350 ($22,600—$14,250) short of what, in fact,
he received. Indeed, it is great indulgence to him
to estimate the difference as so small. For aught
that appears from the bill, the 276 shares received
by the complainant may have included the whole of
the 250 shares of the par value of $100 each ($25,-
000), and only twenty-six shares of the par value
of $50 each ($1,300), in all amounting to $26,300,
in which case the difference between the amount re-
ceived and the amount offered to be returned ($26,-
300—$14,250), would be $12,050.

It results, furthermore, from the figures used in
the bill, that not less than 176 of the shares ten-
dered to the defendant must be different from the
shares transferred by him to the complainant, because
the whole 285 shares tendered are of the par value
of $50 each, when not more than 100 of the 276
transferred could have been of that denomination,
the others being for $100 each. So, it appears,
that complainant, though tendering defendant 285
shares when he received only 276, is, nevertheless,
offering to return from $6,350 to $12,050 less in

Hill *v.* Harriman.

amount, at par value, than he received, and that at least 176 of the shares tendered are different from those received.

With this interpretation of the bill, which seems to us unavoidable, we have no hesitation in holding that the complainant makes no case for a rescission. He offers to return, at most, only a little more than two-thirds in value of what he received from the defendant, and more than half of that tendered is different from that received, when the general rule of rescission requires, as a condition precedent, that the complaining party shall return the same, and all, the property that he received—that he shall place the other party *in statu quo.* Adams' Equity, 191; 21 Am. & Eng. Enc. L., pp. 84–87 inclusive, and citations there made; 2 Warville on Vendors, § 29; *Farmers' Bank* v. *Graves,* 12 How., 51; *Gay* v. *Alter,* 102 U. S., 79; *Coffee* v. *Ruffin,* 4 Cold., 516.

The result would be the same, if, in ascertaining the amount of stock received and offered to be returned by the complainant, we should look alone to the allegation that the 285 shares tendered to the defendant were the same in amount (with "scrip dividend" added), and were "the same stock" as the 276 shares received from him, "excepting a few shares, not exceeding ten, of the par value of $50 each, which complainant disposed of before becoming aware of the frauds" alleged. Looking to that allegation alone for the amount of stock received and tendered back, rescission would be refused, because

20—11 r

the "few shares," admitted to have been disposed
of could not be restored. The general rule, re-
quiring that defendant be placed *in statu quo*, would
apply if only "a few shares, not exceeding ten,"
were wanting.

Some of the authorities, in one form and another,
make an exception to the general rule, and say, in
substance and effect, that rescission for fraud may
be allowed in a given case, upon condition that the
defrauded party, who, in good faith and before dis-
covery of the fraud, disposed of a part of the prop-
erty received by him in the transaction, shall pay
full compensation for the part disposed of, and re-
store the balance in specie. Kerr on F. & M.
(Bump's Ed.), 336; *Maturin* v. *Fredinnick*, 10 Law
Times, N. S., 331 (S. C., 13 Morrison's Mining
Reports, 15); *Henninger* v. *Heald*, 29 At. R., 191;
Warville on Vendors, Sec. 30.

We agree to the soundness of that exception, and
think it should be applied when it is clear that
complete justice can be done thereby. This, how-
ever, is not a case for the application of that ex-
ception. The allegation that complainant disposed of
the "few shares" not tendered back, before he be-
came aware of the frauds complained of, is not suf-
ficient, of itself, to take the case out of the general
rule, even upon the theory that only those "few
shares". are lacking in his offer of restoration. To
bring himself within the exception, he should have
disclosed, additionally, all the material facts with re-

Hill *v.* Harriman.

spect to his disposition of those "few shares;" such, for instance, as the price received, the time and place of sale, the name of the purchaser, what particular shares they were, etc.

Moreover, if that allegation were sufficient to justify a relaxation of the general rule as to those "few shares" (and we say again that it is not), it certainly cannot be so as to the $6,350 to $12,050 of other stock, which, it has been seen from other parts of the bill, he does not offer to return. There is no allegation that he disposed of that stock before he discovered the fraud, nor, indeed, that he has disposed of it at all. ·

The other allegation, that the whole 276 shares were fraudulently issued, and of no value, does not justify rescission without a return of the stock, when it clearly appears, as it does from other parts of the bill, that said stock must have had some value; that complainant received a stock dividend upon it, and has sold and not reclaimed part of it. More need not be said in reference to the original bill.

By his amended bill complainant sought to strike from his original bill pages 3 to 12, which contained the allegations from which it appeared, in the manner already detailed herein, that the 276 shares received by him from the defendant were mostly of the denomination of $100 each, and represented, in the aggregate, from $22,600 to $26,300 of stock at par value.

It was also sought by the amended bill to strike

from the original bill pages 16 to 21, on which was given a history of the exchange of property between complainant and defendant, of defendant's alleged fraud, and of complainant's demand for a cancellation of the trade, etc.

Other allegations, some of them radically different from those covering the pages mentioned, were in the amended bill · presented instead of those desired. to be stricken out. By the substitution proposed in the latter instance it was made to appear, by distinct allegation, that the 276 shares received by complainant were of the par value of $50 each, representing, in all, only $13,800 of stock; and, further, that "the 285 shares tendered to the defendant were the identical stock exchanged by defendant with the complainant for said house and lots, with stock dividend added thereto." The prayer was for rescission primarily, as in the original bill, and for damages in the alternative. Both bills were sworn to by the complainant.

Obviously, the amended bill was intended to introduce an alternative prayer, as well as to cure defects pointed out by the demurrer to the original bill. The alternative prayer was clearly allowable, being in no sense inconsistent, but in harmony, with the primary prayer. It introduced no conflicting theory, gave no different coloring to the alleged conduct of the defendant, was based on precisely the same allegations.

The primary prayer was for rescission, upon the

ground of fraud; the alternative prayer was for damages, upon the same ground. The former sought the fullest relief that a Court of Equity could grant in any case, the latter asked a more limited relief if the fullest relief could not be granted.

By the prayer of the amended bill the complainant, in effect, said: The defendant has defrauded me, and on account of his fraud I ask rescission; but, if I am not entitled to that, because not able to restore all I received from him, or for any other reason, then, on account of the same fraud, I ask that he be compelled to make me whole by the payment of such damages as the law allows in such a case. Such a prayer, if made upon sufficient allegations, would authorize the granting of either the one relief or the other, according to the facts developed on the hearing. 1 Pomeroy's Eq. Jur., p. 246, and citations.

Pretermitting all questions with respect to the sufficiency or insufficiency of the case made by the amended bill in either aspect thereof, we are of the opinion that it was properly stricken from the files, because accompanied by no excuse for, or explanation of, the positive antagonism, conflict, and contradiction between it and the original bill in some of their most material and vital allegations. A party will not be allowed the benefit of such amendatory pleading without specifically showing some inadvertence or mistake in the original pleading, and giving full and satisfactory reason therefor, and for the change desired to be made. This requirement is the

Hill *v.* Harriman.

more imperative—indeed, it is absolute—when, as in this case, both pleadings are sworn to by the party presenting them.

Affirm the decree of the Court of Chancery Appeals for the reasons herein stated.