SIMMONS *et ux.* *v.* EVANS *et ux.*

(*Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

Judd Acuff, of Knoxville, for appellants.

Jenkins & Jenkins, of Knoxville, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is an appeal from the action of the Chancellor in sustaining a demurrer to the bill of complaint filed by ap-

pellants, L. E. Simmons and wife, hereinafter called complainants. The purpose of the bill was to have rescinded on the ground of fraud a sale of a residence to complainants by appellees, hereinafter called defendants, and a recovery of the purchase price of $6,000. Appropriate preliminary injunctions to protect alleged rights were granted. The bill was filed promptly upon the discovery of the alleged fraud and therein the complainants offered to put the defendants in *statu quo* by reconveying the property.

According to the allegations of the bill as amended, complainants entered into negotiations with defendants for the purchase of a residence in Powell Station, Tennessee. During the course of negotiations, defendants told complainants ''that they would have all the water they wanted'' or ''could use all the water they wanted at the flat rate of $2.00 per month.'' Water was furnished the public in that community by a utility known as Powell's Station Water Company. Thereafter, the parties reached an agreement, and the purchase price paid. When complainants took possession they learned that each night the water was cut off at 7 o'clock and was not on again until 7 the next morning. They promptly took the matter up with the defendants, and in the course of discussion, defendants were asked why they didn't tell complainants the facts about the water condition, and one of them replied ''we did not tell you because we knew that you would not buy the property if we told you about the water being off half the time.'' ''We did not tell anybody.'' The bill alleges that the water conditions reduced the value of the property at least one-third and that these complainants would not have bought it had they been informed of that situation. Fraud by concealment of a material fact and by material misrepresentation is al-

leged. They unsuccessfully demanded a return of the purchase price, offering to reconvey the property. They repeat that offer in their bill, which prays for a rescission or in the alternative for damages, if rescission cannot be had.

The Chancellor dismissed the bill as a result of sustaining those grounds of the demurrer which averred that the bill (1) fails to state that the defendants made any fraudulent or false representations with respect to the water supply or with respect to a material matter, and (2) affirmatively discloses that defendants did not make such representations but remained "silent on said subject" and (3) that complainants inspected the property, knew the source of the water supply, and could have made specific inquiry of these defendants or ascertained from other sources the true situation and, therefore, are estopped. No ruling was had upon the 6th ground of the demurrer, averring that the bill sought to procure a judgment for unliquidated damages.

 Since the demurrer avers that the bill shows on its face that the defendants remained silent on the subject, it is well to at once take note of the general rule that "one may be guilty of fraud by his silence, as where it is expressly incumbent upon him to speak concerning material matters that are entirely within his own knowledge." However, as observed in 23 American Jurisprudence, page 856, "the difficulty is not so much in stating the general principles of law, which are pretty well understood, as in applying the law to particualr groups of facts."

 The first question is whether under the group of facts in this case it was incumbent upon the defendants to speak. This Court held as early as 1813 "it to be a sound principle of equity that each party to a contract is bound

to disclose to the other all he may know respecting the subject matter materially affecting a correct view of it, unless common observation would have furnished the information." *Perkins* v. *McGavock*, 3 Tenn. 415, 417. We construe the expression "common observation," as used in the above quotation, to include the exercise of ordinary diligence.

 Defendants knew at the time they were negotiating for the sale of this property to complainants that water was never supplied to this residence from 7 p. m. to 7 a. m. This was a fact of controlling importance in determining the desirability and value of that residence. Defendants realized such controlling importance of this fact, as evidenced by their statement that they did not inform complainants thereof "because we knew that you would not buy the property if we told you." Implicit also in this statement is an admission by the defendants that they knew complainants to be unaware of this very material fact. They were, therefore, duty bound to disclose this fact unless common observation or such inquiry as the exercise of ordinary prudence required would have furnished such information. An inspection of the premises during usual hours of transacting business negotiations of this character would not have disclosed that fact. Complainants in the exercise of ordinary care would not be required to make a night inspection in order to ascertain whether the water situation with reference to this residence was different from what it was during the day. A person of ordinary prudence would not have the remotest idea that there would be any difference, for such difference is so extra-ordinarily unusual as not to be anticipated. Nor were complainants called upon in the exercise of ordinary care to go to the people in the community or to the utility which furnished this

water and inquire whether the water situation with reference to this residence was different from what it appeared. The fact that there was a difference at night from that which appeared to be the fact during the day was so entirely contrary to ordinary experience as to make such inquiry more or less ridiculous in the absence of something to suggest that the furnishing utility made water available only during certain hours, rather than at all hours, as any one would naturally expect. It was, therefore, incumbent upon defendants to reveal this situation to the complainants who, as they knew, were unaware thereof. Their failure to do so was fraud in fact. Their conduct likewise amounted to a misrepresentation of a material fact. Their statement to complainants that there was available all the water they wanted or could use at $2.00 per month, when given a normal interpretation, means that water was at all hours available to those living in this residence. That statement was false and deceptive, as defendants knew, or should have known.

The opinion of the Chancellor does not give the reason upon which he grounded his action in sustaining the demurrer. Defendant's brief in this Court makes the insistence that the fraud alleged is not actionable because, as shown on the face of the bill, "the water supply in this house was no part of the real estate—they merely contracted to buy a house and lot." It may be that not only counsel but the Chancellor also was convinced that this insistence was sound and sustained the demurrer for that reason. That question has not been presented or decided in any of our own cases, in so far as we have been able to find. The controlling principle seems, however, to have been determined. The situation of this "house and lot" with reference to the availability of water was a situation affecting the quality and condition

of that house and lot. In 23 American Jurisprudence, page 824, it is said, "misrepresentations of particular facts affecting the quality or condition of the thing dealt with are generally actionable. Thus, fraud has been held predicable of false representations that a certain privilege is annexed to land sold, that the improvements thereon are of certain kind . . ." The case of *Fries* v. *Gannon*, 9 Ohio App. 387, is annotated in 27 A. L. R., page 344 as follows: "An action for fraud has been held to lie for a misrepresentation that a lot purchased by the plaintiff had sewer and water service." That holding is much in point in the instant case and is, we think, sound on principle. The rule is equally applicable when the fraud consists of remaining silent when there was a duty to speak, as in the instant case.

Since the bill does allege facts which, in law, amount to actionable fraud, there is only left for determination the question of whether complainants are entitled to rescission and repayment of the purchase money. This is a case of studied suppression or concealment of material facts. A contract resulting therefrom "is voidable and relievable in equity" at the instance of the defrauded party. *Bankhead* v. *Alloway*, 46 Tenn. 56, 74. That character of relief is by rescission, which is a function of a Court of equity. When the defrauded purchaser who had paid the purchase price elects to rescind and offers to return the property and place the parties in *statu quo*, such defrauded party is entitled to "recover the entire consideration, which is the measure of damages on rescission." *Southern Brass & Iron Co.* v. *Exeter Mach. Works*, 109 Tenn. 67, 74, 70 S. W. 614, 615. There is a lien upon the land in question to secure the repayment of this purchase money. *Wright* v. *Dufield*, 61 Tenn. 218, 222. This is the relief prayed here, accompanied by

the offer to reconvey. The fact that the bill also prays in the alternative for damages is not inconsistent with the prayer for rescission. *Hill* v. *Harriman*, 95 Tenn. 300, 308, 309, 32 S. W. 202.

The decree of the Chancellor sustaining the demurrer is reversed, and the cause remanded for appropriate proceedings necessary to a hearing upon the merits. The costs of this appeal will be adjudged against the appellees, Woodrow Evans and wife.

All concur.