FILED
09/07/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2018

## DARRIN M. DIXON, ET AL. v. ALAN WAYNE CHRISCO, ET AL.

Appeal from the Chancery Court for Franklin County
No. 19836     Jeffrey F. Stewart, Judge

_____

No. M2018-00132-COA-R3-CV

_____

Purchasers of real property brought this action against the sellers alleging intentional misrepresentation, a violation under the Tennessee Residential Property Disclosure Act ("TRPDA"), and fraudulent concealment. The alleged misrepresentation and violation of the TRPDA concerned a right-of-way in favor of CSX for a railroad and the amount of purchaser's property the right-of-way covered. Purchasers further argued that the sellers fraudulently concealed the planned construction of a second track of the railroad. The trial court dismissed the claims for intentional misrepresentation, the violation of the TRPDA, and negligent misrepresentation but granted judgment in favor of the purchaser regarding the fraudulent concealment. We affirm in part, as modified, and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, as Modified, and Reversed in Part.**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J. and RICHARD H. DINKINS, J., joined.

Gregory M. O'Neal, Winchester, Tennessee, for the appellants, Darrin M. Dixon and Teresa Dixon.

Joseph Eugene Ford, Winchester, Tennessee, for the appellees, Alan Wayne Chrisco and Teddi K. Chrisco.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On October 26, 2013, Darrin Dixon and Teresa Dixon (the "Dixons") drove past

the home of Teddi Chrisco and Wayne Chrisco (the "Chriscos"). As they were passing the house, they noticed a for sale sign in the front yard. The Dixons immediately called the listed real estate agent, Jeannie Pack, to schedule a time to tour the property. Ms. Pack was able to schedule a tour later the same day. The Chriscos were not present during the Dixons' initial tour. At some point during the tour, the Dixons noticed a railway located at the back of the property. The railway was mostly blocked from sight by a thick hedgerow of trees and shrubs. After the tour, the Dixons decided to make an offer for the home. The final purchase price for the property, after negotiations, was agreed to be $235,000, and both Darrin Dixon and Wayne Chrisco signed the land-sale contract that night.

As part of the contract, the Chriscos executed a Tennessee Residential Property Condition Disclosure ("Disclosure Form").[1] Among other things, the Chriscos represented in the Disclosure Form that there were no "encroachments, easements, or similar items that may affect [their] ownership interest in the property." However, this was not the case. CSX possesses a right-of-way related to the railroad located at the back of the property. This right-of-way extends 130 feet on both sides of the existing railroad track. Two months later, on December 20, 2013, the Dixons closed on the property, signing all relevant closing documents, including a warranty deed to the property.[2] The existence of the right-of-way, as well as the size of the right-of-way, is described in both

---

[1] Under the Tennessee Residential Property Disclosure Act ("TRDPA"), an owner of residential real property is required to disclose in good faith "material defects known to the owner" through a Disclosure Form. Tenn. Code Ann. §§ 66-5-201 to -202.
[2] The Dixons' warranty deed expressly mentions the right-of-way seven times.

the Chriscos' and the Dixons' deeds.[3]  While the Dixons were aware of the railroad right-of-way, they had no actual knowledge of how far the right-of-way extended onto the property at the time of purchasing the property.

In February of the following year, the Dixons noticed stakes placed across their backyard by CSX employees.  The stakes were demarcating the boundary of the right-of-way and crossed over the edge of the pool deck.  Concerned at how much of their backyard was being claimed as part of the right-of-way, Mr. Dixon called Ms. Pack seeking clarification on the extent of the right-of-way.  Ms. Pack then called Mr. Chrisco.  After receiving the call, Mr. Chrisco came by the Dixons' home with a copy of a survey completed in 2008 showing that the right-of-way extended 130 feet out from the existing railroad track.  Furthermore, the survey showed that part of the pool deck was over the right-of-way boundary line.  Mr. Chrisco had never previously mentioned to the Dixons that the pool deck extended onto the right-of-way.

The stakes were being placed in preparation for the addition of a second line of railroad tracks that was to be added to the existing track.  Mr. Chrisco had become aware of the possible expansion prior to listing his house for sale.  He was informed by his neighbor, Barry Tawwater, (a now-retired employee of CSX) that CSX planned to add a second line of tracks behind both of their houses.[4]  Mr. Tawwater learned this

---

[3] Mrs. Chrisco filled out the Disclosure Form.  Her husband only briefly glanced over the document.  She stated at trial that she had no knowledge of the extent of the easement. Nevertheless, both she and her husband signed the Disclosure Form.

[4] It is unclear exactly when Mr. Chrisco learned of the expansion.  Mr. Tawwater testified that he believed it was two weeks before the Chriscos placed a for sale sign in their yard, while Mr. Chrisco claimed he learned of the expansion in August of 2013, two months before the

information from a blueprint he was shown by a supervisor of CSX detailing the planned expansion. He testified that, while he did not know when the expansion would occur, it was virtually certain to occur.[5] Mr. Chrisco never mentioned the expansion to the Dixons.

At the time of trial, the second line had been installed along with a railroad spur behind the Dixons' house. During the expansion, the entire tree line between the Dixons' house and the existing railroad was removed. Due to the removal of the tree line and the closer proximity of passing trains, the noise level emanating from trains increased dramatically.[6] Moreover, the removal of the tree line also reduced the Dixons' privacy in their own home, allowing conductors and railroad workers to see directly into the Dixons' backyard and home.[7]

The Dixons filed this lawsuit seeking to rescind the contract or, in the alternative, recover benefit of the bargain damages for the alleged misrepresentations and failure to disclose. The original complaint named the Chriscos as defendants.[8] The complaint alleged that the Dixons relied on representations made in the Disclosure Form. Specifically, the complaint alleged they relied on the representation on the Disclosure

---

house was listed for sale.

[5] Mr. Chrisco testified that Mr. Tawwater told him that no funding for the project had been appropriated. Mr. Tawwater disputes that he ever discussed funding for the project.

[6] Mr. Tawwater estimated that the noise level is five times louder since the destruction of the tree line.

[7] Railroad employees have remarked that they can see what the Dixons are watching on television.

[8] The Dixons filed an amended complaint on March 4, 2016, adding Jeannie Pack and Swafford's Property Shop, LLC as additional defendants. However, the trial court dismissed all claims against both, and neither party is the subject of this appeal.

Form stating there were "no encroachments, easements, or similar items that would affect [their] ownership interest in the property." The complaint further alleged that the "concrete pad around the swimming pool" and fence were on CSX's right-of-way and that the "encroachment" of the swimming pool was known by the Chriscos prior to the sale. The Dixons claimed the failure to disclose this encroachment was in violation of the TRPDA. Also, the complaint alleged that the misrepresentations in the Disclosure Form were made "intentionally, fraudulently, and maliciously" to entice the Dixons into purchasing the home.

In response, the Chriscos filed an answer. The answer admitted that the Chriscos made the statement on the Disclosure Form but neither admitted nor denied whether the Dixons relied on the representation. Moreover, the Chriscos denied in their answer that there was any "encroachment" or any other title defects, stating that the Dixons received exactly the amount of acres specified in the deed. Finally, the Chriscos denied making any misrepresentations to the Dixons.

Subsequently, the Dixons filed another amended complaint. The amended complaint alleged that the "Defendants" received information related to a planned expansion of the railroad from "former CSX employees and present CSX employees." The Dixons further alleged that this information constituted an "adverse condition" that was not disclosed to them. Furthermore, the complaint alleged that the Dixons relied on the "representations" to their detriment and would not have purchased the property had the information been disclosed.

In an amended answer, the Chriscos denied having information that CSX was to

begin construction on the railway; instead, the Chriscos asserted that they were told of a proposed plan for expansion but that no funding had taken place. Moreover, they claimed there was no timeline for the proposed addition of the second line. The Chriscos also denied that the information constituted an adverse condition. Additionally, the Chriscos denied having made any representations regarding the railroad expansion and further allowed that they were under no duty to disclose the information regardless.

After a bench trial, the trial court entered an order in favor of the Dixons regarding the fraudulent concealment of the railroad expansion, but the court dismissed the claims concerning representations under the TRPDA and other statements in relation to the right-of-way. The trial court found that the location and extent of the right-of-way "could have been revealed by efforts required by a buyer under caveat emptor." Furthermore, the trial court reasoned that a disclosure under the TRPDA is "not a warranty and is not a substitute for inspections." Moreover, the trial court found the disclaimer notice signed by the Dixons strongly recommended obtaining a survey, further undermining the Dixons' claim. Regarding the concealment of the railroad expansion, the trial court found that Mr. Chrisco had a duty to disclose his knowledge, as the information was not public knowledge. The only uncertainty was *when* the second railroad would be built, not *if* a second line would be added. The trial court determined Mr. Chrisco's failure to disclose the expansion to be either fraudulent concealment or constructive fraud and awarded the Dixons $15,000 due to the diminution in value of the property and also awarded court costs. The Dixons filed a timely notice of appeal.

## II. ISSUES PRESENTED

On appeal, the Dixons raise three separate issues, which are restated as follows:

1.      Whether the doctrine of caveat emptor applies to this case;

2.      Whether the trial court should have found that the failure to disclose the boundaries of the right-of-way constituted a violation under the TRPDA or a fraudulent concealment[9]; and

3.      Whether the trial court assessed adequate damages for the fraudulent concealment of the expansion of the existing railroad tracks.

For the following reasons, we affirm the decision of the chancery court in part, as modified, and reverse in part.

## III. STANDARD OF REVIEW

Because this case was tried by a trial court without a jury, we will review the findings of fact "de novo upon the record of the trial court" with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Faerber v. Troutman & Troutman, P.C.*, No. E2016-01378-COA-R3-CV, 2017 WL 2691264, at *2 (Tenn. Ct. App. June 22, 2017). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Holland v. Forrester*, No. E2016-02147-COA-R3-CV, 2017 WL 6405111, at *3 (Tenn. Ct. App. Dec. 15, 2017).

## IV. DISCUSSION

### A. Caveat Emptor

In concluding that the misrepresentation contained in the Disclosure Form was not

---

[9] The Dixons' brief framed this issue as a breach of contract action. However, in substance, the argument was both a TRPDA claim and a fraudulent concealment claim.

material, the trial court relied on the common law doctrine of caveat emptor. The Dixons assert that this doctrine does not apply to this case. "[A]s a general principle, the doctrine of caveat emptor applies to contracts for the sale of land in which the vendor conveys title, possession, and control over property to a purchaser." 17 Williston on Contracts § 50:26 (4th ed.) (2018). *See Smith v. Tucker,* 270 S.W. 66, 69 (Tenn. 1925) ("The rule of caveat emptor generally applies to sales of land."). Under the doctrine, "in the absence of an express agreement, a vendor is not liable to the purchaser or others for the condition of the land existing at the time of transfer." 17 Williston on Contracts § 50:26. However, "[f]raud, when made fully to appear, vitiates all contracts into which it enters." *Hunt v. Walker,* 483 S.W.2d 732, 735 (Tenn. Ct. App. 1971).

In *Hunt,* for instance, the plaintiffs alleged that a home purchased from the defendant had been substantially damaged by termites, the hot water heater was defective, and the wiring in the house was dangerous. *Id.* at 734. The plaintiffs claimed that each of these conditions was concealed from them by the defendants. *Id.* The trial court determined that, among other things, the defects were known and concealed by the defendants prior to the sale of the house. *Id.* On appeal, the defendants argued that the trial court erred by not applying the doctrine of caveat emptor to uphold the contract despite the fraudulent concealment. *Id.* at 735. This court disagreed with defendant's contention, holding that the presence of fraud voided the contract. *Id.* In voiding the contract, the presence of fraud overrode the doctrine of caveat emptor. *Id.*

Similarly, the Dixons claim that the fraudulent concealment of the "encroachment" would void the contract irrespective of caveat emptor. The Dixons are

- 8 -

correct in their assertion that caveat emptor does not apply to their fraudulent concealment claim; therefore their claim is not barred by the doctrine. We now address the merits of the fraudulent concealment claim.

### *B. Fraudulent Concealment –Location of the Right-of-Way*

On appeal, the Dixons argue that the Chriscos fraudulently concealed the "encroachment" of the Chriscos' "boundary line" onto CSX's right-of-way. The Dixons also argue that the nondisclosure of the right-of-way on the Disclosure Form violates the TRPDA. "This Court recognizes two actionable types of concealment: where the concealment constitutes a trick or contrivance and when there is a duty to disclose." *Odom v. Oliver,* 310 S.W.3d 344, 349 (Tenn. Ct. App. 2009). "A party commits fraudulent concealment for failing to disclose a known fact or condition where he had a duty to disclose and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Id.* For a plaintiff to establish a claim for fraudulent concealment, the plaintiff must show "(1) the defendant had knowledge of a material existing fact or condition, and that (2) the defendant had a duty to disclose the fact or condition." *Pitz v. Woodruff,* No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *8 (Tenn. Ct. App. Dec. 17, 2004) (citing *Lonning v. Jim Walker Homes, Inc.,* 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986)). For the sale of real property, a fact is considered to be material where it is one of "'controlling importance in determining the desirability and value of th[e] residence.'" *Patel v. Bayliff,* 121 S.W.3d 347, 353 (Tenn. Ct. App. 2004) (quoting *Simmons v. Evans,* 206 S.W.2d 295, 296 (Tenn. 1947)). Moreover, a defendant has a duty to disclose a material fact "unless ordinary diligence would have revealed the

undisclosed fact." *Lonning,* 725 S.W.2d at 685 (citing *Simmons,* 206 S.W.2d at 296)). "[T]here is no duty to disclose a material fact or condition if it was apparent through 'common observation' or if it would have been discoverable through the exercise of ordinary diligence." *Pitz,* 2004 WL 2951979, at *8 (citing *Simmons*, 206 S.W.2d at 297; *Patel*, 121 S.W.3d at 353).

The trial court determined under the common law doctrine of caveat emptor that the Dixons were required to investigate the CSX right-of-way, as the railroad tracks were in plain view and the width of the right-of-way was a matter of public record. Because the Dixons failed to inquire further into the acreage of the right-of-way and failed to obtain a survey of the land, the trial court dismissed the claim.

This issue turns on whether the dimensions of the right-of-way were discoverable through the exercise of ordinary diligence or apparent through "common observation." The Dixons contend that while CSX's right-of-way was a matter of public record, the extent of the "encroachment" was not. A right-of-way[10] is a material fact, as it clearly affects the value and desirability of land. *See Daniels v. Basch,* No. M2004-01844-COA-R3-CV, 2005 WL 2860177, at *3 (Tenn. Ct. App. Oct. 27, 2005) ("Clearly an easement is a material fact as it [a]ffects the desirability and value of the residential property.").

---

[10] The Dixons asserted at trial that CSX's interest in the land was not an easement but a "charter right-of-way." However, a right-of-way is an easement. *Nashville, C & S.L. Ry. v. Bell,* 39 S.W.2d 1026, 1028 (Tenn. 1931) ("A 'right of way' in its legal and generally accepted meaning in reference to a railroad company's interest in land is a mere easement for railroad purposes in the lands of others; and therefore, as a general rule, where land obtained by purchase or agreement is conveyed by an instrument which purports to convey a right of way only, it does not convey title to the land itself, but the railroad company acquires a mere easement in the land for right of way purposes, leaving the fee subject to such servitude in the owner.") (quotation omitted).

However, while the right-of-way does constitute a material fact, the Chriscos had no duty to disclose it because it was apparent through common observation, and its extent was discoverable through the exercise of ordinary diligence. *Compare Daniels*, 2005 WL 2860177, at *3 (holding that a seller had no duty to disclose a TVA easement when TVA wires ran across the property, and a survey and the buyer's own observation "plainly showed the existence of an easement at the back of the property").

"It is well settled that if a purchaser of real property has notice or with ordinary diligence should have had notice of a problem with the real estate, the purchaser cannot attack the validity of the contract for fraud, misrepresentation, or concealment of that problem." *Daniels,* 2005 WL 2860177, at *5 (citing *Winstead v. First Tennessee Bank N.A., Memphis*, 709 S.W.2d 627, 631 (Tenn. Ct. App. 1986)). "If one who is in possession of all material facts, either actually or constructively, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation, or concealment of the information to which all parties had equal access." *Winstead,* 709 S.W.2d at 633.

> [W]here the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness. Unless the representations are such as are calculated to lull the suspicions of a careful man into a complete reliance thereon, it is commonly held, in the absence of special circumstances, that, where the means of knowledge are readily available, and the vendor or purchaser, as the case may be, has the opportunity by investigation or inspection to discover the truth with respect to matters concealed or misrepresented, without prevention or hindrance by the other party, of which opportunity he is or should be aware, and where he nevertheless fails to exercise that opportunity and to discover the truth, he

cannot thereafter assail the validity of the contract for fraud, misrepresentation or concealment with respect to matters which should have been ascertained, particularly where the sources of information are furnished and attention directed to them, as, for example, where the source of accurate information is indicated or referred to in the contract.

*Id.* (quoting *Pakrul v. Barnes*, 631 S.W.2d 436, 438 (Tenn. Ct. App. 1981)).

Both Mr. and Mrs. Dixon testified that they were aware of the railroad adjacent to the back of the property prior to closing. However, they made no efforts to discover the boundaries of the right-of-way by looking at prior deeds, conducting a survey, or obtaining a title opinion. The Dixons did not read the Chriscos' deed, which made an explicit reference to not only the right-of-way itself but also the dimensions of the right-of-way. The Dixons did, however, read their own deed at closing. While their deed also contained multiple explicit references to the scope of the right-of-way, they still failed to ascertain the boundaries of the right-of-way. A right-of-way that is properly recorded provides sufficient notice to purchasers of land. *Butler v. Pitts,* No. W2015-01124-COA-R3-CV, 2016 WL 561078, at *4 (Tenn. Ct. App. Feb. 12, 2016). Both deeds expressly delineate the size of the easement as 130 feet on both sides of the railway, thereby providing notice and imputing the Dixons with knowledge of the extent of the easement.

Additionally, the Dixons made the decision to not obtain a survey of the property despite language in the contract advising the buyer to hire a surveyor.[11] Mr. Dixon

---

[11] The language in the land-sale contract stated "Survey Work and Flood Certifications are the best means of identifying boundary lines and/or encroachments and easements or flood zone classifications. Buyer may obtain a Mortgage Inspection or Boundary Line Survey and Flood Zone Certifications." The Disclosure Form further warned that "[the form] is not a warranty or a substitute for any professional inspections or warranties that the purchasers may wish to obtain." *See also* Tenn. Code Ann. § 66-5-201 ("The disclosure statement referenced in

testified that he did not obtain a survey because he was relying on the "good faith" of the Chriscos. However, "[g]enerally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within its reach." *Solomon v. First Am. Nat'l Bank of Nashville,* 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989). Here, the Dixons were not justified in relying on the Disclosure Form, as obtaining a survey would have revealed the boundaries of their property in relation to the right-of-way.

Because the Dixons could have easily discovered the extent of the right-of-way by either reading the deeds or obtaining a survey, they did not reasonably rely on the Disclosure Form, as the extent of the easement was discoverable through the exercise of ordinary diligence.[12] Therefore, the trial court's decision is affirmed as modified to reflect that the doctrine of caveat emptor is inapplicable.

### C. Benefit of the Bargain Damages – Expansion of the Railway

Finally, the Dixons maintain that the damages assessed by the trial court were inadequate. The trial court awarded $15,000 in damages based on the diminution in value of the real estate. The damages section of this opinion is not related to the fraudulent concealment claim addressed in Section IV(b) above, which concerns the

---

§ 66-5-202 is not a warranty of any kind by a seller and is not a substitute for inspections either by the individual purchasers or by a professional home inspector.)

[12] In regards to the claim under the TRPDA, much of the same reasoning as the fraudulent concealment claim applies. An owner will not be liable where a buyer was aware of the defect at closing or occupancy, whichever occurs earlier. Tenn. Code Ann. § 66-5-208(a)(1). Because the Dixons were aware of the right-of-way by their observation of the railroad, as well as receiving notice through the Chriscos' deed and their own deed, the Chriscos are not liable under the TRPDA.

alleged fraudulent concealment of the extent of CSX's right-of-way. Instead, our analysis here is only related to the fraudulent concealment of the construction of the second line of railroad tracks—a completely separate claim.

The trial court's basis for awarding $15,000 in damages is unclear. The court stated:

> [i]n determining the range of damages, I have taken into consideration the range of different opinions as to the value of the property at the time of the transaction, the determination by the Dixons to remain on the property rather than seek rescission, the testimony of the Chriscos, that they would accept the property back and move into it, in setting the damages in this case from all of which I find the damages to be $15,000 for the diminution in value of the real estate value as a result of the misrepresentation.

The damage award appears to be in line with the testimony of the Dixons' expert, Tom Lynch, who testified that there was a total reduction in the value of the property of $75,000, including an *adjustment of $15,000* as a result of "the encroachment of the pool on the CSX property." However, this reduction in value for the "encroachment" seems only to relate to the dismissed fraudulent concealment claim discussed in Section IV(b), not the fraudulent concealment of the second line of tracks, as the second line of tracks do not pass over the pool. Moreover, it is unclear from Mr. Lynch's testimony (or the testimony of the Chriscos' expert, Craig Brady) how much of the diminution in value of the property at the time of their respective appraisals was related to the installation of the second line of railroad tracks. Nevertheless, because we affirmed the dismissal of the fraudulent concealment claim in relation to the extent of the right-of-way in Section IV(b) of this opinion, we will examine whether the damages awarded are adequate as if the damages were awarded solely based on the fraudulent concealment of the railroad

- 14 -

tracks.

The Dixons contend that the trial court should have awarded $75,000 in compensatory damages in addition to attorney's fees. While not spelled out in the Dixons' brief to this court, the requested damages appear to originate from the difference in value between the purchase price of $235,000 and the appraised value given by the plaintiff's expert, Tom Lynch of $160,000. "[A] party may be held liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentations." *Macon Cty. Livestock Mkt., Inc. v. Ky. State Bank, Inc.,* 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986). "In an action for damages caused by fraudulent misrepresentation, the proper measure of the plaintiffs' general damages is the benefit of the bargain rule." *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228, 233 (Tenn. Ct. App. 1976). The benefit of the bargain rule allows recovery of "the difference between the actual value of the property [] received [a]t the time of the making of the contract and the value that the property would have possessed if [the defendants'] representations had been true." *Id.* "The measure of damages and the fixing of the value of the property are to be determined at the time of the transaction." *Id.*

Here, there is no issue in relying on the purchase price to prove the value of the property at the time of the transaction if the representations had been true, but it is not evidence of the actual diminished value of the property at the time of this particular transaction (i.e., with the planned expansion). *See Flatford v. Williams,* Knox Chancery, C.A. No. 1201, 1989 WL 4419, at *2 (Tenn. Ct. App. Jan. 24, 1989). Neither party

offered any evidence of the actual value of the property at the time of the transaction. Instead, both parties presented appraisals showing the purported market value of the property around two years after the transaction took place.[13] "The plaintiff has the burden of proving both values applied in the formula which measures his general damages, the actual value of the property at the time of the contract and the value of the property if it had been as it was represented to him." *Haynes,* 546 S.W.2d at 233-34. Evidence of appraisals two years later will not suffice as evidence of the actual value of the property at the time of the transaction under the benefit of the bargain rule. *See Flatford,* 1989 WL 4419, at *2 (holding that the plaintiffs "failed to carry [their] burden" under the benefit of the bargain rule where the plaintiffs produced evidence of a sale of the house five years after the plaintiff's purchase of the home); *Haynes,* 546 S.W.2d at 233 (stating that evidence presented of the value of the house at the time of trial does not constitute the correct measure of damages under the benefit of the bargain rule). *See also In re Sallee,* 286 F.3d 878, 901 (6th Cir. 2002) (affirming the district court's holding under Kentucky law that "[t]he Bankruptcy Court's award . . . was clearly erroneous as it not only gave the Sallees the benefit of the bargain but also compensated them for economic changes affecting the value of the laundromat, independent of fraud" where the

---

[13] Ms. Pack also testified to the value of the home. First, she testified that, in 2013, the range of value for the home was between $225,000 to $235,000. By 2017, she asserted that the value of the home had risen to a range of $235,000 to $245,000 with a $238,000 median price. However, this testimony does not meet the benefit of the bargain rule. The first appraisal value given for the house does not represent the actual value, as Ms. Pack did not take into account the fraudulent concealment of the second line of railroad tracks. The appraisal given at the time of trial also does not suffice because evidence of the actual value must be measured at the time of the transaction, not four years after the purchase of the house in 2017. *See Haynes,* 546 S.W.2d at 233.

value of the laundromat four years later was used). There are a countless number of market factors that could have affected the value of the property in the intervening two years, making the appraisals an unreliable indicator of the value of the home at the time of the transaction. *Flatford,* 1989 WL 4419, at *2 ("Variables too numerous to mention can cause fluctuations in the price of realty over a five-year period").

The burden of proving damages rests with the Dixons. *Id.* "Without proof of damages, there can be no award of damages." *Id.* (citing *Inman v. Union Planters Nat'l Bank,* 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982)). Because the Dixons have provided no proof of the actual value of the house at the time of the transaction taking into account the concealment of the second track, the judgment of the trial court is reversed.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed in part, as modified, and reversed in part. Costs of this appeal are taxed equally to the appellants, Darrin M. Dixon and Teresa Dixon, and to the appellees, Alan Wayne Chrisco and Teddi K. Chrisco, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE