*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

HOMETOWN FOLKS, LLC,
       *Plaintiff-Appellant/Cross-Appellee,*

    *v.*

S & B WILSON, INC.; WILLIAM L. WILSON;
SALLY B. WILSON,
       *Defendants-Appellees/Cross-Appellants.*

Nos. 09-6004/6007

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 06-00081—Harry S. Mattice, Jr., District Judge.

Argued: December 7, 2010

Decided and Filed: June 30, 2011

Before: MARTIN, NORRIS, and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John P. Konvalinka, GRANT, KONVALINKA & HARRISON, P.C., Chattanooga, Tennessee, for Appellant. Thomas Greenholtz, CHAMBLISS, BAHNER & STOPHEL, P.C., Chattanooga, Tennessee, for Appellees. **ON BRIEF:** John P. Konvalinka, Charles G. Fisher, Richard G. Pearce, GRANT, KONVALINKA & HARRISON, P.C., Chattanooga, Tennessee, for Appellant. Thomas Greenholtz, T. Maxfield Bahner, Richard W. Bethea, CHAMBLISS, BAHNER & STOPHEL, P.C., Chattanooga, Tennessee, for Appellees.

    MARTIN, J., delivered the opinion of the court. NORRIS, J. (pp. 23-24), delivered a separate opinion concurring in the result reached by the majority opinion, in which COOK, J., joined.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.  Hometown Folks, LLC entered into an Agreement with S & B Wilson Corporation to buy eleven Burger King restaurants. S & B Wilson terminated the Agreement, and Hometown sued for breach of contract and breach of the duty of good faith and fair dealing.  After a trial, the jury found that S & B Wilson had properly terminated the Agreement but had breached the duty of good faith and fair dealing, and it awarded Hometown $190,907.27 in damages.  Over one year later, the district court entered a partial judgment relative to the jury verdict.  The district court denied specific performance and awarded Hometown $5,176.24 of the $424,282.19 in attorneys' fees and expenses that it incurred in connection with the litigation.

On appeal, the parties raise a number of issues.  As an appellant, Hometown argues that the district court erred in: (1) refusing to award Hometown all of its attorneys' fees and expenses incurred in connection with the litigation; (2) failing to enter judgment promptly after the jury verdict; and (3) denying Hometown's claim for specific performance.  As a cross-appellant, S & B Wilson argues that the district court erred in: (1) denying S & B Wilson's motion for judgment as a matter of law as to the claim alleging breach of the duty of good faith and fair dealing; (2) denying S & B Wilson's motion for judgment as a matter of law with respect to damages; and (3) awarding any attorneys' fees and expenses to Hometown.

The district court correctly denied S & B Wilson's motion for judgment as a matter of law as to the claim alleging breach of the duty of good faith and fair dealing. However, we **REVERSE** the district court's denial of judgment as a matter of law to S & B Wilson on damages.  Furthermore, although the district court used an acceptable method to determine a reasonable attorneys' fee award, it applied this method incorrectly.  Therefore, we **REVERSE** the award of attorneys' fees and **REMAND** for a new determination.  Because we grant judgment as a matter of law to S & B Wilson on damages, we need not address Hometown's remaining claims that the district court

erred in failing to enter judgment promptly after the jury verdict and in denying Hometown's claim for specific performance.

## I. FACTUAL AND PROCEDURAL BACKGROUND

William and Sally Wilson are the sole shareholders, directors, and officers of S & B Wilson, which owns and operates eleven Burger King restaurants in the Gainesville, Georgia area. Gordon Davenport and Elliott Davenport are the only members of Hometown, which owns and operates a number of Burger King restaurants in the Chattanooga, Tennessee area. The Wilsons decided to sell their restaurants, and Hometown and S & B Wilson entered into a Purchase and Sale Agreement for the eleven Burger King restaurants on October 4, 2005.

The Agreement required Burger King Corporation to consent to the transaction. On November 8, Burger King sent a letter to Gordon Davenport stating that Hometown had been approved to purchase S & B Wilson's Burger King restaurants. The letter stated that Burger King would require S & B Wilson to place $98,800 in escrow at closing. The jury found, and it is not disputed, that this was the date that Burger King consented to the transaction.

While conducting due diligence on the properties, Hometown became aware of environmental issues at two of the restaurant locations. The transaction stalled during January and February of 2006 as Hometown and S & B Wilson proposed various solutions such as escrow arrangements and set-offs to the purchase price. Hometown's attorney sent one proposal to S & B Wilson's attorney on March 7. S & B Wilson's attorney responded that he was out of the country until March 20, but that he would continue to work on the deal when he returned. On March 14, Hometown notified S & B Wilson that it intended to close the transaction on March 29.

On March 21, S & B Wilson sent a letter to Hometown stating that it was terminating the Agreement pursuant to Section 9.1, which states:

> This Agreement may be terminated and the transactions contemplated hereby may be abandoned at any time prior to the Closing:

. . . .
(d) By Seller if the Closing shall not have occurred on or before the Outside Date [120 days after the Consent Date]; provided that Seller shall not be entitled to terminate this Agreement pursuant to this clause if the failure of Seller to fulfill any of its obligations under this Agreement shall have been the reason that the Closing shall not have occurred on or before said date . . . .
. . . .
(g) By Seller if Burger King requires in excess of $100,000 of remodeling and repair expenditures in order to provide the Burger King Consent.

On April 3, Hometown filed suit against S & B Wilson in the United States District Court for the Eastern District of Tennessee, alleging breach of contract and breach of the duty of good faith and fair dealing, and requesting specific performance and indemnification. On July 10, S & B Wilson moved to dismiss the case for lack of personal jurisdiction and for summary judgment. The district court denied both motions.

The district court determined that a jury should decide the claims related to breach of contract, breach of the duty of good faith and fair dealing, and indemnification, except for those portions related to attorneys' fees and expenses associated with the litigation. After the jury trial, the district court planned to decide the issues of specific performance, attorneys' fees incurred during the underlying transaction, and expenses incurred by Hometown related to the litigation.

The district court held a twelve-day jury trial beginning on November 13, 2007. The parties presented evidence about their intent with regard to the meaning of disputed contract terms, particularly sections 9.1(d) and 9.1(g). In addition, Hometown presented evidence that S & B Wilson breached its duty of good faith and fair dealing by failing to diligently carry out its responsibilities pursuant to the Agreement.

On November 29, S & B Wilson moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 on a number of grounds. Among other things, S & B Wilson asserted that Hometown presented no evidence to allow a reasonable jury to find that a breach of the duty of good faith and fair dealing prevented a closing from taking place. The district court granted the motion for judgment as a matter of law with

respect to a claim that S & B Wilson waived certain contractual defenses, but denied the motion on all other grounds.  S & B Wilson renewed its motion at the close of its case, and the district court again denied the motion.

On December 11, the jury returned a verdict on a special verdict form.  As to Section 9.1(d), the jury found that the "Outside Date" had passed when S & B Wilson terminated the Agreement.  It also found that the reason that the transaction had not closed by the Outside Date was not due to S & B Wilson's failure to fulfill any of its obligations under the Agreement.  The jury found, however, that S & B Wilson should be estopped from terminating the Agreement pursuant to this section.

As to Section 9.1(g), the jury found that Burger King required more than $100,000 in repair and maintenance expenditures in order to grant its consent to the transaction.  The jury also found that S & B Wilson should not be estopped from terminating the contract pursuant to this section.  According to the jury instructions, as discussed further below, these findings imply that the jury found that S & B Wilson properly terminated the Agreement under this provision.

The jury found that S & B Wilson had breached its duty of good faith and fair dealing so as to constitute a breach of contract by either its actions leading up to the termination of the Agreement or its course of conduct in carrying out the terms of the Agreement.  The jury awarded Hometown $190,907.27 in damages.  This amount is equal to Hometown's expenses in connection with the transaction, exclusive of attorneys' fees, to which a representative testified at trial.

After the trial, the district court ordered the parties to submit briefs on whether Hometown was entitled to specific performance, attorneys' fees and expenses in connection with the transaction, and attorneys' fees and expenses relating to the litigation.  On April 3, 2008, the district court entered an order that denied specific performance, but concluded that Hometown could recover its fees and expenses incurred in the underlying transaction and its fees and expenses "arising out of the instant litigation, with the caveat that Plaintiff is entitled to only those expenses that arose out

of, or resulted from, the Defendants' breach of the duty of good faith and fair dealing." The district court ordered Hometown to submit proof of attorneys' fees and expenses.

Hometown submitted proof of attorneys' fees and expenses in connection with the transaction in the amount of $40,292.04, and in connection with the litigation in the amount of $424,282.19. Hometown asserted that it was entitled to recover $346,398.19 of that amount, even though some of that time was spent developing claims on which it did not prevail, because its successful claim was so entwined with its unsuccessful claims that segregation of fees was impossible. On March 5, 2009, the district court entered an order awarding Hometown all of its attorneys' fees and expenses in connection with the transaction in the amount of $40,292.04. Using a "results-based methodology" that will be discussed in detail further below, the district court awarded Hometown only $5,176.24 of the $424,282.19 in attorneys' fees and expenses that Hometown incurred in connection with the litigation.

On December 24, Hometown filed a motion to confirm or enter a judgment on the jury verdict. On January 7, 2009, the district court granted Hometown's motion and entered a partial judgment relative to the jury verdict. On January 20, Hometown filed a Motion to Alter or Amend Judgment, in which it requested that the Partial Non-appealable Judgment be amended to be entered *nunc pro tunc* as of December 11, 2007, the date of entry of the jury's verdict. On March 30, 2009, the district court denied Hometown's motion and entered a final judgment awarding Hometown damages of $45,468.28 in addition to damages awarded by the jury of $190,907.27. Hometown timely filed a Notice of Appeal on August 20, 2009.

Section 10.10 of the Agreement states that "it shall be governed by and construed and enforced in accordance with the laws of the State of Tennessee without regard to its choice of law principles." The parties agreed that the district court should apply Tennessee law.

## II. DUTY OF GOOD FAITH AND FAIR DEALING

Because this is a diversity action, we review the denial of S & B's motion for judgment as a matter of law using the standards applicable under Tennessee law. *See K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996). Under Tennessee law we must "take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence." *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). A verdict should be directed only "where a reasonable mind could draw but one conclusion." *Id.*

S & B Wilson alleges that the district court erred in denying its motion for judgment as a matter of law that it had not breached the duty of good faith and fair dealing. Interrogatory six of the special verdict form contained the following language:

> Because you have found that Defendants could properly terminate the contract under one of the termination provisions, by law, Defendants' termination of the Agreement on March 21, 2006, was not a breach of the duty of good faith and fair dealing. However, actions leading up to the termination of the Agreement or course of conduct in carrying out the terms of the Agreement could be a breach of the duty of good faith and fair dealing.
>
> Not considering Defendants' termination of the Agreement on March 21, 2006, did Defendants breach the duty of good faith and fair dealing such that it constituted a breach of contact?

The jury answered this interrogatory in the affirmative. Thus, we must determine whether Hometown presented evidence showing that S & B Wilson's actions prior to terminating the Agreement breached its duty of good faith and fair dealing.

Tennessee law imposes a duty of good faith and fair dealing in the performance of every contract. *See, e.g.*, *Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009). The purpose of this implied covenant is: "(1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered." *Id.* S & B

Wilson argues that Hometown could have had no reasonable expectation of a closing for two alternative reasons. First, S & B Wilson properly terminated the Agreement. Second, Hometown itself was unwilling to close on the terms of the Agreement. Both arguments fail.

## A. Proper Termination of the Agreement

S & B Wilson argues that it could not have breached the duty of good faith and fair dealing as a matter of law because it was entitled to terminate the Agreement. S & B Wilson moved pursuant to Federal Rule of Civil Procedure 50(b), which provides that:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

"'Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 491 (6th Cir. 2008) (quoting Fed. R. Civ. P. 50 Advisory Committee Note). With regard to the duty of good faith and fair dealing, the only argument presented by S & B Wilson in its Rule 50(a) motion was a sufficiency of the evidence argument. Having reviewed the trial transcript, we conclude that S & B Wilson failed to raise a legal argument with respect to any inconsistency in allowing the jury to find both that the Agreement had been properly terminated and that the duty of good faith and fair dealing had been breached.

During the district court's Rule 51 charge conference, S & B Wilson failed to object to the instruction that explicitly allowed the jury to find a breach of the duty of good faith and fair dealing after it found that S & B Wilson's termination of the Agreement was proper. This omission implies that S & B Wilson conceived of this argument only post-verdict. *Cf. Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 882 n.7 (8th Cir. 2004) ("It is apparent that [defendant] developed the theory raised in their Rule 50(b) motion only after the jury's verdict because it (1) failed to object to the general-verdict form, (2) offered no jury instructions explaining [the legal theory advanced in its post-verdict motion], and (3) made no substantive objection to the [jury] instruction."). Because S & B Wilson conceived of this argument post-verdict, it is improper to assert it in a Rule 50(b) motion. *See Ford*, 535 F.3d at 493 (holding that defendant was barred from raising an issue on a Rule 50(b) motion where defendant did not engage in a colloquy with the district court or opposing counsel on this point and did not request a jury instruction clarifying its argument). Thus, we review only S & B Wilson's sufficiency of the evidence argument.

**B. Sufficiency of the Evidence**

The duty of good faith and fair dealing requires parties to a contract to conduct themselves fairly and responsibly. *See, e.g.*, *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995) ("[T]here is an implied undertaking in every contract on the part of each party that he will not intentionally or purposely do anything . . . which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (internal quotation marks and citation omitted)); *Williams v. Maremont Corp.*, 776 S.W.2d 78, 81 (Tenn. Ct. App. 1989) ("All parties are bound by law to act in word and deed, in a responsible manner . . . ." (internal quotation marks omitted)). Parties have a duty of good faith and fair dealing not only in executing the transaction ultimately contemplated by the contract, but also in fulfilling the preconditions and contingencies set forth in the contract. *See Covington v. Robinson*, 723 S.W.2d 643, 646 (Tenn. Ct. App. 1986) (finding that duty of good faith and fair dealing required purchasers in real estate contract to work in good faith to obtain

financing).  Because the nature of the duty of good faith and fair dealing depends on the contract at issue, "courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable."  *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987).

At trial, Hometown presented evidence that S & B Wilson failed to meet a number of its pre-closing requirements under the Agreement.  For example, Hometown presented evidence that S & B Wilson delayed giving Hometown access to certain properties to perform due diligence as required by the Agreement.  In addition, Hometown presented evidence that S & B Wilson failed to meet its deadline to deliver financial documents to Hometown within twenty days after the end of an accounting period.  Thus, Hometown presented evidence that S & B Wilson breached its duty of good faith and fair dealing by blocking due diligence and failing to deliver required financial information.

Hometown also presented evidence at trial showing that S & B Wilson hindered its attempts to close the transaction contemplated by the Agreement.  Tennessee courts have found that "[e]ach party to the contract [is] under an implied obligation to restrain from doing any act that would delay or prevent the other party's performance of the contract. . . .  Each party [has] the right to proceed free of hinderance by the other party." *ACG, Inc. v. Se. Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct.  App. 1995).  Passive non-cooperation, as well as active non-cooperation, may constitute breach of the duty of good faith and fair dealing.  *See German v. Ford*, 300 S.W.3d 692, 707 (Tenn. Ct. App. 2009).  Hometown presented evidence that S & B Wilson was slow to respond, if it responded at all, to Hometown's attempts to find a solution to the environmental issues.  Hometown also introduced evidence that in March 2006, S & B Wilson deliberately stalled the transaction in an attempt to invoke a termination provision.  Thus, under our extremely deferential standard of review, Hometown presented evidence at trial that S & B Wilson breached the duty of good faith and fair dealing by hindering Hometown's attempts to close the transaction.

Furthermore, the district court was correct to hold that a reasonable jury could have found that Hometown was willing to close on the Agreement as it was written. S & B Wilson points to some evidence that indicates that Hometown was hesitant to close the transaction before the environmental issues were resolved. For example, it points to testimony from Gordon and Elliott Davenport that Hometown was unwilling to close without some adjustments based on environmental concerns, and to several proposals by Hometown to renegotiate the terms of the Agreement. However, Gordon and Elliott Davenport also testified that Hometown was ready to move forward with a closing. When taking the strongest legitimate view of the evidence in favor of Hometown, there was evidence from which a reasonable jury could conclude that Hometown was willing to close the transaction regardless of the environmental issues.

There is sufficient evidence to support the jury's finding that S & B Wilson's actions leading up to the termination of the Agreement or its course of conduct in carrying out the terms of the Agreement breached its duty of good faith and fair dealing. Thus, we **AFFIRM** the district court's denial of S & B Wilson's motion for judgment as a matter of law as to the breach of the duty of good faith and fair dealing.

### III. DAMAGES

The jury awarded Hometown $190,907.27 in damages for the breach of the duty of good faith and fair dealing. The amount of the verdict appears to be taken from Plaintiff's Trial Exhibit 39, Appx. 51, which is entitled "Summary of Fees and Expenses In Connection With The Transaction (Other Than Expenses of Counsel)." This exhibit summarizes costs incurred by Hometown before S & B Wilson terminated the transaction. S & B Wilson argues that the district court erred in denying its motion for judgment as a matter of law with respect to damages because no evidence shows that Hometown suffered any damages as a result of the actions it claimed violated the duty of good faith and fair dealing.

As discussed above, when reviewing a denial of judgment as a matter of law, we must "take the strongest legitimate view of the evidence in favor of the opponent of the

motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence." *Holmes*, 551 S.W.2d at 685.  Tennessee courts have found that "[t]he purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990).  To support an award of damages, "[t]he injured party must sustain damages that consequently result from the breach." *Metro. Gov't v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 35 (Tenn. Ct. App. 2005).  Thus, we must determine whether a reasonable jury could have found that Hometown established that it suffered $190,907.27 in damages as a result of S & B Wilson's breach of the duty of good faith and fair dealing.

We do not know which specific conduct the jury found violated S & B Wilson's duty of good faith and fair dealing.  There appear to be two alternative ways in which the jury could have found that Hometown sustained $190,907.27 in damages as a result of  S & B Wilson's breach of the duty of good faith and fair dealing.  First, the jury could have found that Hometown sustained the damages as a result of S & B Wilson's actions blocking due diligence and failing to deliver required financial information as discussed above.  However, Hometown suffered no damages from these actions because S & B Wilson properly terminated the Agreement.

Alternatively, the jury could have concluded that Hometown suffered $190,907.27 in damages as a result of S & B Wilson's delay in informing Hometown that the amounts that Burger King was requiring in escrow and its expenditures on repairs had triggered its right to terminate the Agreement under Section 9.1(g).

Hometown presented evidence that S & B Wilson knew as early as October 2005 that Burger King was going to require it to spend more than $200,000 in order to approve the transaction.  Hometown also presented evidence that when Burger King issued its consent form on November 8 stating that it would require S & B Wilson to place $98,800 in escrow at closing, S & B Wilson had already spent more than $30,000

on repairs and maintenance.  Thus, the evidence shows that S & B Wilson arguably knew at least by November 8 that it would be able to terminate the Agreement under Section 9.1(g) because the amount already spent and the amount required in escrow totaled more than $100,000.  Hometown presented evidence that although it had spent little money at this point, it proceeded to spend significant money on due diligence on or around November 8.  S & B Wilson did not exercise its right to terminate until March 21, 2006, after Hometown had spent $190,907.27 on the transaction.  If S & B Wilson had disclosed its knowledge and intentions about the amount that Burger King was requiring it to spend in order to gain consent for the transaction, then Hometown may have been able to avoid nearly all of the $190,907.27 it spent before S & B Wilson terminated the Agreement.

All three panel members agree that S & B Wilson's failure to disclose to Hometown that the amounts that Burger King was requiring in escrow triggered its right to terminate did not cause Hometown damages.  However, we disagree on the reasoning: I believe that S & B Wilson was under no duty to disclose this information, while the other two panel members believe that Hometown's ordinary due diligence should have revealed that S & B Wilson would be able to terminate the Agreement.  I briefly explain my view below, and they explain theirs in the concurrence.

The jury could have found that S & B Wilson's delay in informing Hometown about its decision or right to terminate the Agreement caused Hometown's damages only if S & B Wilson had a duty to disclose that information.  *Cf. Homestead Group, LLC v. Bank of Tenn.*, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009) (stating in the context of the tort of negligent misrepresentation that "to find such liability, there must also be a showing that the person accused of the concealment had a duty to the other to disclose the matter in question").  The Tennessee Supreme Court has held that "each party to a contract is bound to disclose to the other all he may know respecting the subject matter materially affecting a correct view of it, unless common observation would have furnished the information."  *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947) (internal quotation marks and citation omitted).  Subsequent Tennessee opinions have

relied on *Simmons* for the proposition that "[a] party to a contract has a duty to disclose to the other party any material fact affecting the essence of the subject matter of the contract, unless ordinary diligence would have revealed the undisclosed fact." *Lonning v. Jim Walter Homes*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986). The district court instructed the jury in accordance with this law.

However, I am convinced that this law could not serve as a basis to award damages to Hometown. Applying Tennessee law, we have noted that the *Lonning* "court's general statements of law regarding the duty of disclosure are most properly characterized as dicta." *O'Neal v. Burger Chef Sys., Inc.*, 860 F.2d 1341, 1351 (6th Cir. 1988). The cases applying this law have generally been limited to real estate purchases and used car sales. *See Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 572 n.9 (6th Cir. 2003). Thus, we have declined "to anticipate that the Tennessee Supreme Court would extend the *Simmons* and *Lonning* cases to the context of a franchise dispute." *Id.* Although this case involves a real estate purchase, Hometown is alleging that S & B Wilson had a duty to disclose a material fact regarding the contract at issue, rather than the land itself. Furthermore, this case involved an arms-length transaction similar to a franchise dispute. *See O'Neal*, 860 F.2d at 1350 (noting that a franchise agreement did not create any fiduciary or confidential relationship between franchisor and franchisee). Thus, the *Lonning* disclosure duties may not apply in this case at all.

Even if *Lonning* were to apply, neither S & B Wilson's failure to disclose its *decision* to terminate nor its failure to disclose its *right* to terminate could serve as a basis for awarding damages to Hometown.

First, S & B Wilson's failure to disclose its alleged decision to terminate the Agreement could not serve as a basis for liability because Hometown did not introduce sufficient evidence to prove when exactly S & B Wilson decided to terminate the contract. Although Hometown presented evidence that S & B Wilson knew as early as October 2005 that it had the right to terminate, there is no evidence that it had made the decision to exercise that option.

Second, the fact that S & B Wilson failed to disclose that its right to terminate the contract had been triggered could not serve as a basis for liability. Applying Tennessee law, we have held that franchisors are not "under any duty to disclose their long-term corporate strategy to . . . franchise owners." *O'Neal*, 860 F.2d at 1352. Thus, we held that a franchisor is under no duty to disclose its decision to sell the franchise to franchisees. *Id.* at 1350. As discussed above, this holding applies to other arms-length transactions not involving franchises. *See id.* Therefore, under Tennessee law, a party to a contract owes no duty to disclose its intent to exercise its contract rights. This is consistent with the weight of authority. *See, e.g.*, *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 989 (4th Cir. 1981) ("[T]here is very little to be said in favor of a rule of law that good faith requires one possessing a right of termination to inform the other party promptly of any decision to exercise the right."); *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 104 (Tex. 1999) (holding that a party to a contract owes no duty to disclose its intent to exercise its contract rights).

Furthermore, Hometown does not identify any authority in Tennessee or elsewhere that imposes as part of the duty of good faith and fair dealing a duty to inform the other party of merely a *right* to terminate. The Agreement provided that S & B Wilson could terminate the Agreement if Burger King required more than $100,000 of remodeling and repair expenses in order to consent to the transaction. In other words, it was within S & B Wilson's contract rights to terminate the Agreement if Burger King required more than $100,000 of remodeling and repair expenses. Furthermore, the condition was waivable and it was also within S & B Wilson's contract rights to decline to terminate the Agreement. The Agreement did not contain any notice requirements relating to this provision. Thus, Hometown is attempting to use the duty of good faith and fair dealing to incorporate an additional term into the contract that it did not negotiate. In my view, one party should not be required to give notice to the other that its right to terminate a contract has been triggered unless the contract so provides. If a party wants notice when a condition is triggered, it is free to negotiate for that provision. Thus, I do not believe that the Tennessee Supreme Court would extend the *Simmons* and *Lonning* cases to hold that the duty of good faith and fair dealing encompasses a duty to

disclose the fact that a right to terminate a contract has been triggered when the contract itself does not include a notice provision.

S & B Wilson's actions in blocking due diligence and failing to provide financial information did not cause Hometown damages because S & B Wilson properly terminated the Agreement. Furthermore, all three panel members agree that S & B Wilson's failure to disclose to Hometown that the amounts that Burger King was requiring in escrow triggered its right to terminate did not cause Hometown damages, albeit for different reasons. Thus, we **REVERSE** the district court's denial of judgment as a matter of law to S & B Wilson on damages.

## IV. ATTORNEYS' FEES

The district court correctly held that Hometown could recover only those expenses that arose out of, or resulted from, S & B Wilson's breach of the duty of good faith and fair dealing. Furthermore, the district court used an acceptable method to determine a reasonable attorneys' fee award. However, the district court applied this method incorrectly.

The district court held that Hometown was entitled to recover "only those expenses that arose out of, or resulted from, the Defendants' breach of the duty of good faith and fair dealing," but not "its expenses arising out of or resulting from its claim that Defendants' termination of the Agreement was a breach of contract." Hometown argues that it is entitled to recover all of its reasonable attorneys' fees and expenses in connection with the litigation, and that the district court failed to apply Tennessee law regarding the segregation and reasonableness of attorneys' fees. S & B Wilson argues that Hometown is not entitled to any award because the district court correctly found that the claims alleging improper termination and those alleging a breach of the duty of good faith and fair dealing are separable, and Hometown failed to show what expenses arise out of or result from the breach of the duty of good faith and fair dealing.

In general, we review "a district court's award of attorney fees and costs for an abuse of discretion." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir.

2008).   Substantial deference "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A district court abuses its discretion if it "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (internal quotation marks and citation omitted).   However, we review the district court's interpretation of state law and of contracts de novo.  *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198 (2d Cir. 2003).

**A. Damages that Hometown Could Recover**

In diversity cases, attorneys' fees are governed by state law.  *See Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp. 2d 897, 913 (W.D. Mich. 2009). Tennessee follows the "American Rule" that "in the absence of a contract, statute or recognized ground of equity so providing there is no right to have attorneys' fees paid by an opposing party in civil litigation." *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 611 (Tenn. 1979).  Where a contract provides for attorneys' fees, however, "[t]he parties are entitled to have their contract enforced according to its express terms." *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988).  The Supreme Court of Tennessee has held that "costs and attorneys' fees are recoverable under an express indemnity contract if the language of the agreement is broad enough to cover such expenditures." *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985).  Under Tennessee law, "[a] cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).  A court must "ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

Hometown claims that it is entitled to its expenses, including attorneys' fees, incurred in its pursuit of the litigation pursuant to Section 7.2(b) of the Agreement, which states:

> Sellers and Principals, jointly and severally, hereby agree to indemnify, defend, and hold harmless Purchaser and its officers, managers and members from and against all Damages asserted against or incurred by Purchaser or such officers, managers, and members, directly or indirectly, arising out of or resulting from: (i) breach of any representation, warranty, covenant or agreement of Seller or Principals contained in or made pursuant to this Agreement . . . the other Transaction Documents or the transactions contemplated hereby or thereby or any facts or circumstances constituting such a breach . . . .

The term "Damages" is defined in Section 7.2(a) as "demands, claims, actions or causes of action, assessments, losses, damages, liabilities, costs and expenses, including, without limitation, interest, penalties and reasonable attorney's fees, costs and disbursements and expenses."

As discussed above, a duty of good faith and fair dealing is implied in every Tennessee contract. *See, e.g.*, *Lamar Adver. Co.,* 313 S.W.3d at 791. Because it is imposed in every contract, the duty of good faith and fair dealing qualifies as a "representation, warranty, covenant, or agreement" under Section 7.2(b). The jury found that S & B Wilson's actions leading up to the termination of the Agreement or course of conduct in carrying out the terms of the Agreement was a breach of the duty of good faith and fair dealing. We are bound by the jury's determinations of fact when resolving equitable issues. *Arban v. West Pub. Corp.*, 345 F.3d 390, 408 (6th Cir. 2003).

Tennessee courts have held that "[a]ll provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." *Park Place Ctr. Enters., Inc. v. Park Place Mall Assocs., L.P.*, 836 S.W.2d 113, 116 (Tenn. Ct. App. 1992). The district court correctly noted that the causation element of the Agreement would be meaningless if the court were to award Hometown all of its trial expenses. Thus, the district court correctly interpreted the plain language of Section 7.2(b) to hold S & B Wilson responsible only for the expenses "arising out of or resulting from" its breach of the duty of good faith and fair dealing.

Hometown contends that it is entitled to recover its fees and expenses incurred in prosecuting its unsuccessful claims because they are inextricably entwined with S & B Wilson's breach of the duty of good faith and fair dealing. Hometown relies heavily on *Brunsting v. Brown*, No. M2000-00888-COA-R3-CV, 2001 WL 1168186 (Tenn. Ct. App. Oct. 4, 2001), to argue that Tennessee has recognized that in a lawsuit involving multiple claims, a party entitled to recover its attorneys' fees does not have a duty to segregate those fees to the extent that they relate to a claim that is entwined with a claim under which attorneys' fees are allowable. This argument fails for two reasons. First, the *Brunsting* opinion is unpublished and thus non-binding. *See S. Ry. Co. v. Foote Mineral Co.*, 384 F.2d 224, 228 (6th Cir. 1967) (stating that an unpublished opinion from the Tennessee Supreme Court is not binding on that court or on federal courts). Second, the attorneys' fees provision in *Brunsting* required the non-prevailing party to "pay all costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees." *Brunsting*, 2001 WL 1168186, at *6. The *Brunsting* court noted that "[t]his is heady language, broad and sweeping." *Id.* Here, in contrast, the contract specifically provided that S & B Wilson was required to indemnify Hometown only for damages "arising out of or resulting from" breach of a covenant. Thus, the language in *Brunsting* is significantly broader than the language at issue here. Because the Agreement explicitly addresses how to apportion fees and expenses among causes of action, the district court correctly found that Hometown could recover only those expenses that it could prove arose out of or resulted from S & B Wilson's breach of the duty of good faith and fair dealing.

## B. Method for Determining a Reasonable Award

The district court determined that the most rational method of calculating the appropriate fee award in this case was to compare the amount of damages that Hometown sought and the amount of damages that it recovered. S & B Wilson argues that Hometown should not recover any of its attorneys' fees because it failed to meet its burden of proving which expenses arose out of or resulted from litigating the breach of

the duty of good faith and fair dealing.  Hometown argues that the district court failed to consider all the relevant factors in fashioning an award.

S & B Wilson's argument that Hometown should not recover any attorneys' fees fails.  Hometown had the burden to prove what a reasonable fee would be in this case. *See Wilson*, 745 S.W.2d at 873 ("Obviously, the burden of proof on the question of what is a reasonable fee in any case is upon the plaintiff and plaintiff should be in a position to tender such proof.").  However, Hometown did submit some evidence of the fees that it incurred to litigate S & B Wilson's breach of the duty of good faith and fair dealing in the form of an affidavit from John P. Konvalinka, an attorney who represented Hometown in the litigation.  Furthermore, the jury found that S & B Wilson violated its duty of good faith and fair dealing, and according to the plain language of the contract, Hometown is entitled to recover its fees and expenses that arose out of or resulted from this breach.  Thus, the district court correctly found that Hometown could recover the attorneys' fees that arose out of or resulted from this breach.

Hometown argues that the district court failed to consider all the relevant factors in fashioning an award.  The Supreme Court of Tennessee has held that the appropriate factors to be used as guides in fixing a reasonable attorney's fee include: (1) the time devoted to performing the legal services; (2) the time limitations imposed by the circumstances; (3) the novelty and difficulty of the legal issues and the skill required to perform the service; (4) the fee customarily charged in the locality for similar services; (5) the amount involved and the results obtained; and (6) the experience, reputation, and ability of the attorney. *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980); *see also* Tenn. Sup. Ct. R. 8 (setting forth substantially similar guidelines).  The United States Supreme Court has held that "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

Tennessee courts have rejected a methodology based solely on the ratio of the fees requested to the amounts eventually awarded to the plaintiff.  *See Keith v. Howerton*, 165 S.W.3d 248, 252-53 (Tenn. Ct. App. 2004).  However, the district court in this case relied on *Connors* and acknowledged that it was aware of the variety of

factors that should be considered in fixing a reasonable attorney's fee. The main factor that the district court relied on was the amount involved and the results obtained. Depending on the case, certain *Connors* factors may be more relevant than others. Here, S & B Wilson did not dispute the reasonableness of Hometown's claimed attorneys' fees, and the district court's only duty was to apportion these fees among Hometown's claims. Thus, certain factors such as the time limitations imposed by the circumstances, the fee customarily charged in the locality for similar services, and the experience, reputation, and ability of the attorney would have little relevance. In addition to the amount involved and the results obtained, the district court appeared to consider the time devoted to performing the legal services:

> Having presided over a twelve day jury trial and ruled on significant pre-trial and post-trial motions, the Court is intimately familiar with this case, and it is obvious to the Court that what this case was really about was Plaintiff obtaining ownership of the Burger King franchises. At trial, Plaintiff was primarily concerned with proving breach of contract in hopes that the Court would award specific performance and order Defendants to sell the franchises to Plaintiff.

In addition, the district court carefully considered and rejected the option of awarding Hometown a portion of its expenses based on the number of claims on which it was successful compared to the number of claims brought in this case. Typically, the district court is entitled to wide discretion because of its "superior understanding of the litigation." *See Imwalle*, 515 F.3d at 551. Thus, the district court did not err in placing primary reliance on the ratio of Hometown's success to what it claimed in calculating an attorneys' fee award.

However, because we grant S & B Wilson judgment as a matter of law as to damages, the amount that Hometown recovered in damages is now zero.[1] Although

---

[1] In addition, we note that despite the fact that the district court properly selected a method for fashioning an award of attorneys' fees, it erred in applying that method to the facts of this case. The district court found that Hometown sought $18,959,899.31 in damages and obtained an award of $231,199.33. The district court found that Hometown recovered 1.22% of the recovery that it sought. Thus, the district court found that a reasonable award for expenses and fees to Hometown was 1.22% of the claimed $424,282.19, or $5,176.24. In making this calculation, the district court listed the value of the Burger King franchises, increased financing costs, and duplicate closing costs as part of the judgment that Hometown sought. However, Hometown would have had to pay these amounts in order to purchase the

Hometown has not proven damages, it has proven that S & B Wilson breached the duty of good faith and fair dealing. Thus, under the terms of the Agreement, Hometown may still be entitled to reasonable attorneys' fees arising out of or resulting from the breach, determined by the factors outlined in *Connors*. Thus, we **REVERSE** the district court's award of attorneys' fees and **REMAND** for recalculation.

## V. REMAINING CLAIMS

Because we grant S & B Wilson judgment as a matter of law as to damages, we need not address Hometown's claim that the district court erred in failing to enter judgment promptly after the jury's verdict.

Furthermore, because we grant S & B Wilson judgment as a matter of law as to damages, it is obvious that the district court did not err in denying Hometown's claim for specific performance. *See, e.g.*, *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979) (noting that where the award of damages would be practical and adequate, a court generally will not compel specific performance). Thus, we **AFFIRM** the district court's denial of specific performance.

## VI. CONCLUSION

The district court correctly denied S & B Wilson's motion for judgment as a matter of law as to the jury's finding of a breach of the duty of good faith and fair dealing. However, we **REVERSE** the district court's denial of S & B Wilson's motion for judgment as a matter of law on damages. Furthermore, because the district court miscalculated a reasonable attorneys' fee award, we **REVERSE** and **REMAND** the attorneys' fee decision.

---

franchises from S & B Wilson. Thus, the judgment actually sought by Hometown was much smaller than the district court calculated.

———————————

## CONCURRENCE

———————————

ALAN E. NORRIS, concurring.  I concur in the result reached by Judge Martin's opinion, but respectfully disagree with the analysis offered in Section III.  While I agree with the majority that S & B Wilson's failure to disclose its alleged decision to terminate the Agreement between Hometown and S & B Wilson cannot serve as a basis for liability because Hometown presented no evidence indicating when S & B Wilson made its decision to terminate, I disagree that under Tennessee law, S & B Wilson's failure to disclose its right to terminate the contract could not serve as a basis for liability.  The majority states that "[i]n our view, one party should not be required to give notice to the other that its right to terminate a contract has been triggered."  Maj. Op. at 15.  I see no reason to rule on this aspect of Tennessee law because Hometown's claim would fail under an expansive interpretation of the duty of good faith and fair dealing.

Hometown's ordinary due diligence should have revealed that S & B Wilson would be able to terminate the Agreement.  "A party to a contract has a duty to disclose to the other party any material fact affecting the essence of the subject matter of the contract, *unless ordinary diligence would have revealed the undisclosed fact*." *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986) (emphasis added).  Viewing the evidence in the light most favorable to Hometown, S & B Wilson knew at least by November 8, 2005 that it would be able to terminate the Agreement under Section 9.1(g) because the amount already spent and the amount required in escrow totaled more than $100,000.  At this time, Hometown admitted knowing that Burger King had required S & B Wilson to place $98,900 in escrow.  This is still $1,101 short of the amount needed to satisfy Section 9.1(g), but it is enough to place Hometown on notice that the repairs could exceed $100,000.  It is not plausible for Hometown to claim that it would not have proceeded with its due diligence because of the $1,201 shortfall because only a relatively minor repair would have been necessary to cause S & B Wilson to meet the $100,000 threshold for termination.  Hence, Hometown's duty

of due diligence should have led it to ascertain whether any additional repairs had been made.[1]

Because I believe that federal courts sitting in diversity should refrain from unnecessarily deciding issues of state law, I would reverse on the above stated factual grounds.

---

[1]The record indicates that Hometown was told the amount in escrow decreased after November 8, 2005, and Burger King stated that they would inform Hometown when additional repairs would be completed. Yet Hometown, performing due diligence, never inquired as to whether any repairs had been made before November 8.