RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SHH HOLDINGS, LLC,

*Plaintiff-Appellee*,

*v.*

ALLIED WORLD SPECIALTY INSURANCE COMPANY,

*Defendant-Appellant*.

No. 22-3283

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cv-02900—James S. Gwin, District Judge.

Argued: March 9, 2023

Decided and Filed: April 21, 2023

Before: GIBBONS, BUSH, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Charles W. Chotvacs, DYKEMA GOSSETT, PLLC, Washington, D.C., for Appellant. Michael P. O'Donnell, BROUSE MCDOWELL, LPA, Cleveland, Ohio, for Appellee. **ON BRIEF:** Charles W. Chotvacs, DYKEMA GOSSETT, PLLC, Washington, D.C., Monica A. Sansalone, GALLAGHER SHARP, LLP, Cleveland, Ohio, for Appellant. Michael P. O'Donnell, David Sporar, BROUSE MCDOWELL, LPA, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellee SHH Holdings, LLC, sued defendant-appellant Allied World Specialty Insurance Company ("Allied World") after Allied World declined insurance coverage for SHH's settlement of certain employees' retaliation claims

under the False Claims Act.  SHH sued for breach of contract and breach of the duty of good faith and fair dealing, seeking a declaratory judgment and money damages.  The district court granted summary judgment to SHH on its breach of contract and declaratory judgment claims and to Allied World on the bad faith claim.  The district court also granted attorney fees to SHH, finding that Ohio law permits fees when an insured party is forced to litigate to obtain coverage.  Allied World appeals both the grant of summary judgment and the award of attorney fees.  Because the plain language of SHH's policy excluded coverage for the retaliation claims, we reverse.

I.

On November 1, 2016, a False Claims Act qui tam action was filed under seal[1] in the Eastern District of Virginia and named as defendants SHH Holdings, LLC, its subsidiaries, and several nursing facilities allegedly owned by or that contracted with SHH (collectively "SHH").  The sealed complaint alleged that SHH violated the False Claims Act by providing unreasonable and unnecessary services to patients for the purpose of claiming the highest possible Medicare reimbursement.  The qui tam action had been brought by three co-relators,[2] who also alleged in the complaint that SHH retaliated against them for internally reporting the fraudulent billing practices.  The qui tam complaint included four counts—three counts alleging fraudulent claims-submission practices and one count alleging retaliation against employees who reported the fraudulent activity.

On January 20, 2017, SHH received a Civil Investigation Demand ("CID") from the United States Department of Justice ("DOJ").  The CID informed SHH that it was the subject of a pending False Claims Act investigation for fraudulent claims-submission practices.  To facilitate the DOJ's investigation, the CID requested that SHH produce various documents and

---

[1]The False Claim Act requires that qui tam complaints be filed under seal.  31 U.S.C. § 3730(b)(2).  Upon filing, the relators must provide the government with the complaint and a written disclosure of all material evidence underlying the allegations.  *Id.*  The complaint is filed in camera and remains under seal to allow the government time to consider whether it will intervene.  *Id.*  During this time, the government can undertake an investigation and issue civil investigative demands.  *Id.*  This is the process that played out in this case.

[2]The co-relators were Hope Wright, a regional manager; Laura Webb, a rehab director; and Deborah Edmonds, a director of rehab operations.

respond to interrogatories. It also requested information about recent terminations of SHH employees, including the relators. The CID did not, however, explicitly inform SHH about the retaliation allegations. By July 17, 2017, SHH had produced all of the requested documents and issued its completed responses to the CID.

Almost two years later, on April 15, 2019, SHH submitted an application to Allied World, seeking directors & officers liability coverage, employment practices liability coverage, and fiduciary liability coverage. The policy that SHH sought, and eventually received, was a "claims made" policy, such that coverage applies only to claims first made during the policy period. *See Wright State Physicians, Inc. v. Doctors Co.*, 78 N.E.3d 284, 289 (Ohio Ct. App. 2016). The policy explained that "[a] Claim shall be deemed first made when any Insured first receives notice of the Claim." DE 44, Joint Ex. 7, Page ID 1564.

In its application, SHH used another company's form, not Allied World's own application form, but Allied World accepted the application in that format. SHH also submitted other information and documents for review, including its financial statements. The application that SHH completed and submitted included several questions about pending matters that could lead to claims under a potential policy.

Question 1 asked SHH to "provide full details of all inquiries, investigations, administrative charges, claims, and lawsuits filed within the last three (3) years against [SHH], any Subsidiary, any Executive or other entity proposed for any coverage for which [SHH] is applying." SHH checked "none."

Question 2 asked whether "[SHH], any Subsidiary, any Executive or other entity proposed for coverage kn[ew] of any act, error or omission which could give rise to a claim, suit or action under any coverage part of the proposed policy." SHH checked "no."

The application also included a section (the "Application Exclusion"), which was incorporated into the policy, that stated:

> It is agreed that with respect to questions [1 and 2] . . . if such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), information or involvement exists, then such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), and any inquiry, investigation, administrative

charge, claim, or lawsuit arising therefrom or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage.

Based on this application, Allied World issued SHH a policy effective from April 17, 2019, to April 17, 2020.

In August 2019, the qui tam action was partially unsealed, and SHH received a copy of the complaint. Before the unsealing, SHH had been negotiating with the government and, by the time it received the qui tam complaint, had reached a settlement in principle regarding its claims-submission practices. With the partial unsealing of the complaint, however, SHH learned for the first time about the retaliation allegations.

On September 11, 2019, SHH notified Allied World of the qui tam action and sought coverage for legal costs related to defending against the retaliation allegations. Allied World denied coverage under both SHH's employment practices liability coverage and its directors and officers liability coverage. In explanation, Allied World cited Question 1, Question 2, and the Application Exclusion as the basis for the denials.

In response, SHH sued Allied World in federal court[3] for breach of contract and breach of the duty of good faith and fair dealing. SHH sought damages for the costs of defending the retaliation claims and a declaratory judgment clarifying the parties' rights and obligations under the policy. Additionally, SHH sought legal fees that it incurred pursuing coverage from Allied World in federal court.

While this case was pending, SHH continued settlement negotiations for the underlying False Claims Act claims. On March 30, 2020, SHH reached a $2.2 million settlement with the relators for the retaliation count in the qui tam action. Separately, on April 14, 2020, SHH finalized a $10 million settlement with the government for the claims-submissions violations. The qui tam action was then dismissed on April 20, 2020.

In August 2020, the parties filed cross motions for summary judgment in this case, with both parties seeking summary judgment on the breach of contract and declaratory judgment

---

[3]The suit was filed in federal court based on diversity jurisdiction.

counts, and Allied World also seeking summary judgment on the bad faith claim. To facilitate consideration of the summary judgment motions, the parties agreed to submit joint stipulated facts and exhibits.

In November 2020, the district court issued its opinion, granting summary judgment to SHH on its breach of contract and declaratory judgment claims and to Allied World on the bad faith claim. The district court later issued an amended opinion and order, clarifying a footnote. After additional briefing from the parties, the district court issued a separate opinion and order on the disputed damages issues. The district court awarded SHH $2 million[4] in reimbursement for the settlement amount, $55,226.54 in defense costs incurred in defending against the retaliation claims, $60,077.37 in pre-judgment interest, and post-judgment interest at the federal statutory rate. The district court also found that SHH was entitled to attorney fees for bringing the action against Allied World and awarded $221,482.44 based on SHH's submitted invoices. In total, the district court awarded $2,336,786.35 to SHH.

## II.

Allied World appeals the district court's grant of summary judgment to SHH on the breach of contract and declaratory judgment claims as well as its award of attorney fees to SHH. For the breach of contract and declaratory judgment claims, Allied World argues that the district court erred by misinterpreting the plain language of the policy application. For the award of attorney fees, Allied World argues that the district court erred when it concluded that an exception to the general American rule, which requires each party to pay its own fees, applies to this case.

We review a grant of summary judgment de novo. *Colvin v. Caruso*, 605 F.3d 282, 288 (6th Cir. 2010). Summary judgment is appropriate only when "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)(2)). At this stage, "the district court must draw all reasonable inferences in favor of the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[4]This amount represented the settlement amount of the retaliation claims minus the policy's $200,000 retention.

587 (1986)). Summary judgment is not proper where there is "sufficient evidence supporting a factual dispute" so that the factfinder must "resolve the parties' differing versions of the truth at trial." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In a diversity case, we apply the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). Here, the parties agree that Ohio law applies. A federal court exercising diversity jurisdiction must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (internal quotation marks omitted). If the Ohio Supreme Court has not addressed the issue presented, we "must anticipate how [Ohio's] highest court would rule and may rely on the state's intermediate appellate court decisions, along with other persuasive authority, in making this determination." *Kepley*, 715 F.3d at 972 (internal quotation marks omitted).

A district court's award of attorney fees is generally reviewed for an abuse of discretion. *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011) (citation omitted). To the extent that the district court's determination turned on the interpretation of state law, de novo review applies. *Id.* (citing *Ziegler v. IBP Hog Mktg., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)). "In diversity cases, attorneys' fees are governed by state law" and are thus subject to de novo review. *Id.* (citation omitted).

## III.

In granting summary judgment to SHH on its breach of contract and declaratory judgment claims, the district court concluded that the policy did not exclude the retaliation claims from coverage. To arrive at this conclusion, the district court interpreted Questions 1 and 2 as encompassing only "inquiries, investigations, administrative charges, claims and lawsuits" that relate to the liability coverage the applicant is seeking. DE 48, Am. Op. & Order, Page ID 1700 (quoting DE 44, Joint Ex. 5, Page ID 1415). The district court then interpreted the Application Exclusion as excluding from coverage only those inquiries or investigations encompassed by Question 1 and Question 2. Accordingly, the district court concluded that

Questions 1 and 2 did not encompass the claims-submissions claims because SHH could not and did not intend to seek coverage for them.  The court also determined that Questions 1 and 2 did not encompass the retaliation claims because SHH did not have notice of the qui tam complaint at the time of the application.

Under Ohio law, insurance policies are contracts, and their terms are interpreted using principles of contract interpretation.  *Sharonville v. Am. Emps. Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006).  In interpreting a contract, "the principal objective is to determine the intention of the parties" and give effect to that intent.  *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 714 N.E.2d 898, 900 (Ohio 1999).  The first step in ascertaining the parties' intent is to look at the plain meaning of the words in the contract.  If the language is clear and unambiguous, contract terms are given their plain and ordinary meaning.  *Id.* at 901.  A contract "is unambiguous if it can be given a definite legal meaning."  *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003).

Ambiguity exists, however, "where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations."  *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991) (applying Ohio law); *see also Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co.*, 691 F.3d 821, 826 (6th Cir. 2012) ("A term is ambiguous if it is reasonably susceptible of more than one meaning.") (applying Ohio law).  If a contract provision is ambiguous, that ambiguity will ordinarily be interpreted against the insurer because the insurer typically drafts the contract.  *Id.*

We therefore center our analysis on the plain language of the contract at issue—SHH's insurance policy, including the incorporated application.  The parties agree that our determination turns on the interaction of Question 1, Question 2, and the Application Exclusion.

IV.

The insurance application asked about SHH's prior conduct, then explained that anything within the ambit of these questions is excluded from coverage.  Application Question 1 asked SHH to "provide full details of all inquiries, investigations, administrative charges, and lawsuits filed within the last (3) years against [SHH], any Subsidiary, any Executive or other entity

proposed for any coverage for which [SHH] is applying." DE 44, Joint Ex. 5, Page ID 1415. SHH answered "none" in response to this question.

In the district court, Allied World and SHH offered competing interpretations of this provision, focusing primarily on the "proposed for any coverage" language. SHH argued that the "proposed for any coverage" language indicates that the question required disclosure only of inquiries or investigations relevant to the liability coverage sought—that is, an inquiry or investigation that could implicate the eventual liability coverage.[5] For its part, Allied World argued that "proposed for any coverage" applies to "any Subsidiary, any Executive or other entity" and requires an applicant to disclose any inquiry or investigation, regardless of subject matter, targeting an entity for which the applicant seeks insurance coverage.

The district court agreed with SHH. The court first acknowledged that some interpretive tools supported Allied World's position. The court went on, however, to note that such an interpretation left the disclosure requirement unqualified. Thus, an applicant would be required to disclose any "administrative charges, claims, and lawsuits" even if they were completely unrelated to the applied-for policy. The court surmised that this could include a "local zoning citation for an unpermitted shed" on an SHH's executive property or an executive's "divorce or child custody proceedings." DE 48, Am. Op. & Order, Page ID 1701. The district court concluded that this "strange result[ ]" weighed against Allied World's interpretation and in favor of SHH's. *Id.*

On appeal, Allied World argues that the district court erred in its interpretation of Question 1's scope and that Question 1 unambiguously encompasses the CID. Allied World faults the district court for turning to hypotheticals to demonstrate that Allied World's interpretation would require the potential disclosure of unrelated and irrelevant matters. Instead, Allied World argues that the district court should have looked to the specific facts of this case to

---

[5]SHH's application sought three coverages—directors & officers liability coverage, employment practices policy, and fiduciary liability policy. Allied World denied the claim under both the directors & officers and employment practices liability coverages. In this litigation, SHH seeks coverage for the retaliation claims only under the employment practices liability policy. SHH's position is that the three coverages are separate policies and that even if the CID was relevant to another coverage, it was not relevant to the employment practices liability coverage. Thus, under SHH's reading, it was not obligated to disclose the investigation for the employment practices coverage.

determine whether Question 1 was ambiguous as applied to the CID. SHH, in contrast, maintains that the application's language was ambiguous and that the district court correctly construed that ambiguity against Allied World.[6]

Like the parties and district court, we focus our analysis on the "proposed for any coverage" language. The general rule is that a qualifying word or phrase should ordinarily be read to modify only the noun or phrase that it immediately follows. *Lockhart v. United States*, 577 U.S. 347, 351–52 (2016). Applying that rule, "proposed for any coverage" modifies the phrase immediately preceding it—"any Subsidiary, any Executive or other entity." This reading is the most natural because it reflects a reader's basic intuition, as reading "proposed for any coverage" to modify "inquiries, investigations, administrative charges, and lawsuits," requires that the reader exert substantial "mental energy . . . to carry the modifier" across the sentence. *Id.* at 351. Thus, the plain language of Question 1 demonstrates that it encompasses any inquiry or investigation targeting an entity for which coverage is sought.

Unlike the district court, we are not persuaded that Question 1's scope is ambiguous simply because it sweeps broadly. First, it is permissible that a contract imposes a heavy burden on one of the parties, so a court may not re-write it simply on that basis. *See Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 150 N.E.3d 28, 33 (Ohio 2019). Second, a contract can be unambiguous when applied to some facts but not others. *Park-Ohio Indus., Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1219 (6th Cir. 1992) (applying Ohio law). Thus, the district court's discussion of hypothetical disclosure obligations was not dispositive of whether Question 1 unambiguously encompassed the qui tam complaint, even if the district court was correct that the contract could not reasonably be read to cover those hypotheticals. Third, requiring broad disclosure makes sense in this context because the number and nature of matters recently brought against an applicant is relevant information for an insurance company assessing the potential

---

[6]SHH also argues that Allied World's interpretation would "lead to an absurd result." CA6 R. 22, Appellee Br., at 15. SHH contends that the district court also came to this conclusion when it commented that Allied World's interpretation would lead to "strange results." *Id.* First, a "strange result" is not synonymous with an absurd result. Second, the absurdity exception to the plain-language rule is "narrow in scope and is necessarily limited by the meaning of the term 'manifest absurdity' itself." *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 150 N.E.3d 28, 33 (Ohio 2019). Thus, "[c]ontract language is absurd not simply when it is unreasonable but rather when it is *ridiculously* unreasonable, unsound, or incongruous." *Id.* (citation and internal quotation marks omitted) (emphasis in original). That high bar is not met here.

underwriting risk, even if those matters do not tie directly to the pursued policy. *See e.g., US HF Cellular Commc'ns, LLC v. Scottsdale Ins. Co.*, 776 F. App'x 275, 286 (6th Cir. 2019) (enforcing broad disclosure obligations because "[i]f the insurer knows, for example, that one officer or director has a history of being sued for business-related actions at previous companies that employed him, the insurer may not want to insure the proposed insured company, for fear that the particular employees' [sic] actions will lead to another suit.").

Therefore, we find no ambiguity in Question 1 and hold that it encompasses any inquiry, investigation, or lawsuit—regardless of subject matter—targeting SHH or any related entity seeking coverage. Accordingly, we conclude that Question 1 encompasses the qui tam complaint because it was a lawsuit that had been filed within the three years preceding SHH's application.

V.

Application Question 2 asked whether "[SHH], any Subsidiary, any Executive or other entity proposed for coverage kn[ew] of any act, error or omission which could give rise to a claim, suit or action under any coverage part of the proposed policy." DE 44, Joint Ex. 5, Page ID 1416.

The district court found that neither the claims-submission violations nor the retaliation claims fell within the scope of Question 2 because SHH could not obtain coverage for the claims-submission violations under the policy and because it had no notice of the retaliation claims. On appeal, Allied World argues that the district court erred in its interpretation of Question 2 because the provision does not encompass only acts, errors, or omissions for which the applicant intends to seek coverage under the policy. Instead, Allied World maintains that the question encompasses any act, error, or omission that could possibly give rise to a claim. Here, the qui tam complaint gave rise to a claim under the policy, and Allied World argues that Question 2 therefore encompasses it. In contrast, SHH argues that Question 2 did not encompass

the qui tam complaint because it could not[7] seek coverage for the claims-submission violations and because it had no notice of the retaliation claims.

Based on its plain language, Question 2 has a different scope than Question 1. It encompasses acts, errors, or omissions even if they have not yet resulted in an inquiry or investigation. But it asks only about those acts, errors, or omissions that "could give rise to a claim" under the sought-after policy. *Id.*

Here, Question 2 encompasses the events underlying the qui tam complaint. The retaliation component of the qui tam complaint challenged SHH's actions in relation to the relators' employment. SHH knew that it took adverse employment actions against the relators, and the CID requested information about recent terminations of SHH employees, including the relators. These facts resulted in a claim under the policy, suggesting they were serious enough to warrant disclosure. Thus, Question 2 encompasses the retaliation claims contained in the qui tam complaint.

VI.

The Application Exclusion provides:

> It is agreed that with respect to questions [1 and 2] . . . if such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), information or involvement exists, then such inquiry(ies), investigation(s), administrative charge(s), claim(s), lawsuit(s), and any inquiry, investigation, administrative charge, claim or lawsuit arising therefrom or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage.

DE 44, Joint Ex. 5, Page ID 1416.

The Application Exclusion's plain language states that if any information, investigation, or lawsuit exists at the time of the application and would be responsive to Questions 1 or 2, that

---

[7]SHH had been notified of its potential liability for fraudulent Medicare claims more than two years before the policy period would begin, so it could not "give rise to a claim, suit or action" under the policy.

matter is excluded from coverage.[8] Additionally, any inquiry, investigation, or information arising out of such a matter is similarly excluded.

As explained above, the CID was responsive to Question 1, and the facts surrounding SHH's treatment of its employees were responsive to Question 2. Therefore, the retaliation claims, which arose from the investigation and these facts, are excluded. It does not matter whether SHH knew about the retaliation claims because the Application Exclusion requires only that the relevant information, investigation, or lawsuit falls within the scope of Question 1 or 2 and existed at the time of application. Therefore, the Application Exclusion applies to the qui tam complaint and precludes coverage for the corresponding retaliation claims. Accordingly, the district court erred in granting summary judgment to SHH on the breach of contract and declaratory judgment counts.[9]

## VII.

For these reasons, we reverse the district court's grant of summary judgment to SHH on the breach of contract and declaratory claim and its award of attorney fees to SHH. We therefore remand to the district court to enter judgment in favor of Allied World.

---

[8]Because the district court had previously concluded that Questions 1 and 2 did not encompass the CID or the retaliation claims, it found that the Application Exclusion did not preclude coverage.

[9]Because we reverse the district court's grant of summary judgment to SHH on the breach of contract and declaratory judgment counts, we also reverse as to attorney fees because SHH is no longer a prevailing party.