RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DIAMOND TRANSPORTATION LOGISTICS, INC.,
          *Plaintiff-Counter Defendant-Appellant*,

          *v.*

THE KROGER COMPANY,
          *Defendant-Counter Claimant-Appellee*.

No. 23-3462

———————————

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:19-cv-05448—Sarah Daggett Morrison, District Judge.

Decided and Filed:  May 13, 2024

Before:  GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:**  Gerhardt A. Gosnell II, ARNOLD & CLIFFORD LLP, Columbus, Ohio, Dan J. Binau, HARRIS, MCCLELLAN, BINAU & COX P.L.L., Columbus, Ohio, for Appellant. Kevin L. Murch, Rebecca J. Johnson, PEREZ MORRIS LLC, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.  Was Diamond Transportation Logistics contractually required to cover Kroger's costs in settling a claim for negligent selection, hiring, and retention? The district court said yes.  We agree and affirm.

# I. BACKGROUND

This case's material facts are undisputed.

## A.

In 2010, Diamond Transportation Logistics and Kroger joined forces. They entered an agreement for Diamond to transport Kroger goods. They entered another in 2016, along largely the same terms.

The parties' transportation agreement contained several different provisions. Among them was one providing Kroger set-off rights. That provision allowed Kroger to withhold shipping payments from Diamond for claims it had against Diamond if certain conditions were met. The agreement also discussed indemnification. It stated:

> [Diamond] does hereby expressly agree to indemnify, defend and hold harmless [Kroger], its affiliates and subsidiaries and their respective directors, officers, employees, agents, successors and assigns ("Indemnit[e]es") from and against any and all suits, actions, liabilities, judgments, claims, demands, or costs or expenses of any kind (including attorney's fees) resulting from (i) damage or injury (including death) to the property or person of anyone, whomsoever they may be, arising or resulting at any time or place from any operations hereafter performed either by [Diamond], its agents, employees or subcontractors in performing services for Kroger or (ii) the negligence, willful misconduct or violation of law by [Diamond], its agents, employees or subcontractors except to the extent that such liability is caused by the sole negligence or willful misconduct of Kroger.

2010 Transp. Agreement, R.1-1 at PageID 29.

## B.

The agreement's set-off and indemnification provisions proved particularly salient starting in 2015. That December, one of Diamond's subcontractors hit a minivan head-on while hauling Kroger goods through Missouri. The truck driver survived, but the minivan's three passengers passed away. Diamond told Kroger about the collision. It did not, however, mention the deaths.

Three months later, the decedents' family sued for wrongful death in state court. At first, the family sued Diamond, the truck driver, and a few others. Once the family members learned

that Diamond was shipping Kroger goods during the collision, they also sued Kroger. To do so, they amended their complaint on July 12, 2017. The new complaint added Kroger as a defendant and alleged that it was negligent and reckless in selecting, hiring, and retaining Diamond as a shipper.

Kroger turned to Diamond to cover its legal expenses. After all, it believed the transportation agreement's indemnity provision required Diamond to do so. Kroger made its first demand on September 8, 2017. Some two months later, Diamond and Kroger entered an indemnity agreement.[1] Diamond agreed to "indemnify and hold [Kroger] harmless from any claim or liability arising from" the December 2015 collision. 2017 Indemnity Agreement, R.1-1 at PageID 51. Still, by June 2018, Diamond hadn't reimbursed Kroger. Kroger reached out again, specifying its legal fees. But that demand, too, proved fruitless.

Kroger then took matters into its own hands. Starting in July 2018, it withheld shipping payments from Diamond. Kroger ended up withholding nearly $1.8 million. Diamond quickly realized it wasn't getting paid but didn't know why. In a September letter to Diamond, Kroger explained: it thought Diamond was "obligated to defend and indemnify Kroger." Sept. 2018 Letter, R.145-1 at PageID 2763. By failing to do so, Kroger said Diamond was breaching their agreements. Kroger stated that it would continue to withhold payment until things changed.

One month later, Diamond took action. Though its insurer refused to provide Kroger coverage, Diamond said it would "defend, hold harmless and indemnify Kroger" in the family's suit per the parties' transportation agreement. Oct. 11, 2018 Letter, R.145-1 at PageID 2764. Diamond even retained local defense counsel for Kroger. But by then, according to Kroger, it was too late. Over the past year, Kroger's counsel had interviewed several witnesses and handled extensive discovery requests. Further, within the next month, Kroger's corporate designee would be deposed, and Kroger would mediate with the family. Diamond asked Kroger

---

[1]This agreement proved to be of little value to Kroger. To the extent that it indemnified Kroger for its own negligence, the district court held that it was void under Ohio Revised Code § 2305.52. That statute, effective March 23, 2016, makes agreements "collateral to . . . a motor carrier transportation contract" that indemnifies a party "against any liability . . . resulting from [its own] negligence" void as against public policy. Ohio Rev. Code § 2305.52(A). Kroger doesn't challenge that conclusion.

to delay mediation so it could get up to speed. But Kroger pressed on and settled with the decedents' family for over $2 million.

## C.

That brings us to this case. Come December 2019, Kroger still hadn't paid Diamond the money it withheld. Diamond sued to try to recoup those funds. In response, Kroger filed claims of its own, including one for breach of the transportation agreement's indemnity provision. Kroger sought the difference between what it withheld and what it ultimately settled the family's claims for—roughly $600,000.

Both parties moved for summary judgment. Relevant here, as to Kroger's claim for breach of the agreement's indemnity provision, the district court ruled in Kroger's favor and awarded it $612,429.45 plus interest. Diamond appeals.

## II. ANALYSIS

Diamond raises only one question[2]: Was it required, under the parties' transportation agreement, to indemnify Kroger for the family's claim? No one disputes that the family's claim triggers clause (i) of the indemnity provision, which indemnifies Kroger from damage or injury (including death) to a person while a Diamond subcontractor ships Kroger goods. Instead, the issue is whether the indemnity provision's exception for "liability . . . caused by the sole negligence or willful misconduct of Kroger" relieves Diamond of its obligation. 2010 Transp. Agreement, R.1-1 at PageID 29.

The district court, for two reasons, thought the exception did not. To start, it held that the exception applied only to clause (ii), not clause (i). Recall, clause (ii) indemnifies Kroger from Diamond or its subcontractors' negligence, willful misconduct, or violation of law. Even if the exception applied to both clauses, the court didn't think Diamond fared any better. It held that the exception applies only to "instances of Kroger's 'sole negligence.'" Op. & Order, R.205 at PageID 6432. The family's claim against Kroger, however, required "the negligence of two or more parties." *Id.* at 6433 (emphasis omitted). So either way, Diamond was on the hook.

---

[2]Diamond initially raised three issues for review. But in its reply brief, it withdrew two of them.

Having reviewed the district court's conclusion de novo, we see no error.  *See Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017); *see also Royal Ins. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008).

**A.**

In interpreting the parties' transportation agreement, we apply Ohio law.  *See Westfield Nat'l Ins. v. Quest Pharms., Inc.*, 57 F.4th 558, 561 (6th Cir. 2023).  This case, after all, is in federal court based on diversity jurisdiction.  *SHH Holdings, LLC v. Allied World Specialty Ins.*, 65 F.4th 830, 836 (6th Cir. 2023).  Bound by Ohio law, we must follow any decisions from the Ohio Supreme Court that address the issue before us.  *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).  If none exist, we must predict how that court would rule.  *Id.*

Ohio law directs us to determine and give effect to the parties' intent.  *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 714 N.E.2d 898, 900 (Ohio 1999).  To do so, we begin with the agreement's text—in which the parties' intent is "presumed to reside."  *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996).  If the agreement's text is unambiguous, our interpretive task also ends with the text, and we apply the agreement as written.  *City of St. Marys v. Auglaize Cnty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (Ohio 2007).  If, however, one can reasonably read the text multiple ways, a court can consider extrinsic evidence.  *Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992); *see Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008).  Courts may also construe an ambiguous agreement against the drafter.  *See Cent. Realty Co. v. Clutter*, 406 N.E.2d 515, 517 (Ohio 1980).

Applying Ohio law, we hold that the indemnity provision's exception does not relieve Diamond of its indemnity obligation.  Its terms are unambiguous.  Even assuming the exception applies to clause (i), it excepts indemnification only for "liability . . . caused by the *sole negligence* . . . of Kroger."  2010 Transp. Agreement, R.1-1 at PageID 29 (emphasis added). And Kroger's liability for the family's negligent selection, hiring, and retention claim was not caused by its "sole negligence."

**1.**

Three things inform our understanding of what "sole negligence" means:  (1) precedent from the Ohio Supreme Court; (2) the phrase's plain and ordinary meaning; and (3) our caselaw.

Begin with Ohio Supreme Court precedent.  *See Savedoff*, 524 F.3d at 762.  Though that court hasn't defined "sole negligence," it hinted at what it thought the phrase meant in *Kendall v. U.S. Dismantling Co.*, 485 N.E.2d 1047 (Ohio 1985).  There, the court held that an Ohio statute covering construction contracts barred indemnification regardless of whether an indemnitee's negligence was sole *or* concurrent.  *Id.* at 1049.  The court thought an interpretation barring only sole negligence would be unjust or unreasonable.  *Id.* at 1050.  After all, if the statute was so limited, the court said an indemnitee would be absolved "of all liability if its negligence fell short of one hundred percent by any fraction, however small." *Id.*; *see also id.* at 1049–50 (noting that the indemnity exception covered "damages or [costs] caused by the sole negligence" of the indemnitee).  The Ohio Supreme Court thus seems to interpret indemnity exceptions for "sole negligence" to apply only when an indemnitee is the lone negligent party.

Now consider the plain and ordinary meaning of "sole negligence."  *See Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978) ([C]ommon words . . . are to be given their plain and ordinary meaning . . . .").  In ascertaining plain and ordinary meaning, Ohio courts commonly turn to dictionaries.  *See, e.g.*, *Athens v. McClain*, 168 N.E.3d 411, 419 (Ohio 2020).  Relevant here, Merriam-Webster defines "sole" as "being the only one" and "having no sharer."  *Sole*, Merriam-Webster Unabridged, https://unabridged.merriam-webster.com /collegiate/sole (last visited May 10, 2024).  The Oxford English Dictionary similarly says "sole" means "[o]ne and only" and "[u]naccompanied by other things or qualities; standing alone." *Sole*, Oxford Eng. Dictionary, https://www.oed.com/dictionary/sole_adj (last visited May 10, 2024).  As a result, the plain and ordinary meaning of "sole negligence," like the Ohio Supreme Court's understanding, requires that Kroger be the only negligent party for the exception to apply.

Our last consideration—our caselaw—suggests a similar meaning.  In *Thompson v. Budd Co.*, we interpreted a "sole negligence" exception to require that an indemnitee be "100%

responsible for the plaintiff's injuries." 199 F.3d 799, 811 (6th Cir. 1999) (citing *Burdo v. Ford Motor Co.*, 828 F.2d 380, 381 (6th Cir. 1987)). Granted, we were applying Kentucky law and a slightly different indemnification exception—one focused on "loss or damage" caused by sole negligence and not "liability." *Id.* at 810–11. So the takeaway here is slightly different but still analogous: Kroger must be 100% responsible for its *liability* for the "sole negligence" exception to apply.

Based on these three considerations, we think the Ohio Supreme Court would interpret the transportation agreement's "sole negligence" exception to apply only when the liability at issue stems from Kroger's negligence alone.

**2.**

But Diamond's negligence played at least a part in Kroger's liability for the family's claim. Claims of negligent selection, hiring, and retention take two to tango—negligent parties, that is. *See Lehrner v. Safeco Ins./Am. States Ins.*, 872 N.E.2d 295, 305 (Ohio Ct. App. 2007). The claim's elements tell the story. To succeed, a plaintiff must show, among other things, "the employer's negligence in hiring or retaining the employee" *and* an "employee's act or omission." *Jones v. MTD Consumer Grp., Inc.*, 32 N.E.3d 1030, 1042 (Ohio Ct. App. 2015). Kroger's liability, therefore, was "not viable without an underlying act of negligence by [Diamond]." *Lehrner*, 872 N.E.2d at 305.[3] Because Diamond must have also been negligent for Kroger to be liable, the "sole negligence" exception does not relieve Diamond of indemnification.

\*          \*          \*

In sum, for the indemnity provision's exception to apply, Kroger's liability needed to stem from its negligence alone. But it didn't, so Diamond needed to cover Kroger's costs in settling the family's negligent selection, hiring, and retention claim.

---

[3]As Diamond observes, *Lehrner* involved a different indemnity exception than the one here. *See Lehrner*, 872 N.E.2d at 302 (addressing an exception "for a bodily injury arising out of the operation of an automobile"). But that doesn't render the opinion inapposite. In addressing a claim for negligent hiring, supervision, and retention, the court generally explained that there must be two negligent parties—the employer and the employee. *Id.* at 305. That proposition alone shows that Kroger's liability did not turn exclusively on its own negligence.

**B.**

Diamond disagrees with our conclusion. In its view, our interpretation of "sole negligence" prevents the indemnity exception from ever being triggered "because it requires the existence of two mutually exclusive things." Appellant's Br. 14. Diamond's reasoning, taken at face value, appears logical. It says that clause (ii) requires Diamond to indemnify Kroger for claims resulting from Diamond's negligence. Yet the indemnity exception applies only if "the same underlying claim" is caused by Kroger's negligence alone.[4] *Id.* at 15. Those two things cannot co-exist. *Id.* As a result, Diamond contends that our interpretation effectively renders the exception meaningless—contrary to Ohio precedent requiring otherwise. *Id.* at 14–17 (citing, among other cases, *Wohl v. Swinney*, 888 N.E.2d 1062, 1066 (Ohio 2008), and *Hybud Equip. Corp. v. Sphere Drake Ins.*, 597 N.E.2d 1096, 1103 (Ohio 1992)).

But Diamond makes two oversights. *First*, it reads clause (ii) of the indemnity provision too narrowly. That clause doesn't only apply to claims resulting from Diamond's negligence. It also extends to those from Diamond's "violation of law." 2010 Transp. Agreement, R.1-1 at PageID 29. That phrase could include claims for strict liability, which don't involve negligence. *Zavinski v. Ohio Dep't of Transp.*, 135 N.E.3d 1170, 1179 (Ohio Ct. App. 2019) ("Strict liability 'is liability that does not depend on actual negligence or intent to harm.'"). There lies at least one scenario where the exception (under our interpretation) alongside clause (ii) still has bite. *Second*, Diamond overlooks the use of different language in the indemnity provision's opening clause and its exception. The opening clause provides indemnification for, among other things, "suits, actions . . . claims, [and] demands . . . resulting from" Diamond's negligence, which involve mere allegations. 2010 Transp. Agreement, R.1-1 at PageID 29. The exception, however, refers to "liability," which turns on ultimate responsibility. *Id.* Kroger could thus face a *suit, action, claim, or demand* resulting from Diamond's negligence—based on a plaintiff's allegations—but still not be entitled to indemnification under the exception because Kroger

---

[4]Diamond contends that the only way to avoid this dilemma is to define "sole negligence" to refer to "negligence that is direct, and 'not vicarious' or 'not derivative.'" Appellant's Br. 22 (citing *Brown-Spurgeon v. Paul Davis Sys. of Tri-State Area, Inc.*, No. CA2012-09-069, 2013 WL 1883214, at *10 (Ohio Ct. App. 2013)); *see also id.* at 23. Under that definition, Diamond wouldn't be responsible for covering any liabilities from Kroger's breach of an independent duty, even if Diamond were also negligent.

proved solely negligent for the *liability*.  For these two reasons, our interpretation of the "sole negligence" exception controls.

### III.  CONCLUSION

Kroger wasn't solely negligent for its liability.  We affirm.